[No. S049642. Aug. 29, 1996.]

AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, Plaintiff and Respondent, v. UNEMPLOYMENT INSURANCE APPEALS BOARD, Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, and Asher Rubin, Deputy Attorney General, for Defendant and Appellant.

Altshuler, Berzon, Nussbaum, Berzon & Rubin, Stephen P. Berzon and Scott A. Kronland for Plaintiff and Respondent.

Grant R. Specht, Robert K. Miller, Barbara Macri-Ortiz, Andrew Koenig, M. Carmen Ramirez, Esta Mott and Cynthia L. Rice as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

CHIN, J.—We granted review to decide a narrow question of first impression: whether an administrative law judge may award interest on a payment of retroactive unemployment insurance benefits. Administrative law judges, acting on behalf of the Unemployment Insurance Appeals Board (the Board), sit by authority granted under Unemployment Insurance Code section 100 et

seq. The code limits these judges to reviewing the action of the Employment Development Department (EDD) in its ministerial determination of unemployment benefit eligibility. (Unemp. Ins. Code, § 1334.) Nowhere does the Unemployment Insurance Code grant the administrative law judges, or the Board, the express authority to award interest on an administrative benefit award.

By contrast, pursuant to Civil Code section 3287, subdivision (a) (§ 3287(a)), courts have awarded prejudgment interest on a trial court judgment following a successful administrative mandamus action to recover *wrongfully withheld* benefits. (*Aguilar* v. *Unemployment Ins. Appeals Bd.* (1990) 223 Cal.App.3d 239, 246 [272 Cal.Rptr. 696] (*Aguilar*) [trial court properly ordered EDD to pay interest on unemployment benefits wrongfully withheld]; see *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 681-682 [131 Cal.Rptr. 789, 552 P.2d 749] (*Tripp*), overruled on other grounds in *Frink* v. *Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476].) Interest may be awarded in the mandamus action because the requirements for the additional award of interest are met once the court determines the Board wrongfully denied benefits. In order to recover section 3287(a) interest in the mandamus action, the claimant must show: (1) an underlying monetary obligation, (2) damages which are certain or capable of being made certain by calculation, and (3) a right to recovery that vests on a particular day. (*Aguilar, supra,* 223 Cal.App.3d at pp. 242-243.) The rationale for the mandamus interest award is that a claimant who is wrongfully denied unemployment insurance benefits by the Board must receive compensation for the egregious *delay* in receiving benefits caused by the necessity of filing a mandamus action challenging the Board's denial. (Cf. *Tripp, supra,* 17 Cal.3d at p. 683; see 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1397, pp. 868-869 [prejudgment interest compensates plaintiffs for delay in recovery of damages].)

Notwithstanding the Board's restricted powers, the Court of Appeal held that a claimant's successful attempt to "backdate" unemployment insurance benefits she was already receiving could entitle her to recover section 3287(a) prejudgment interest after the Board determined that she was eligible for the additional benefits. Relying on *Knight* v. *McMahon* (1994) 26 Cal.App.4th 747 [31 Cal.Rptr.2d 832] (*Knight*), the Court of Appeal awarded the interest as an additional benefit even though the Board had never wrongfully withheld benefits, the claimant had not met the requirements of section 3287(a), and the Board itself concluded it lacked the power to award interest as part of its benefit award.

We conclude the Court of Appeal erred. Neither the Unemployment Insurance Code nor section 3287(a) authorizes the Board, or administrative

law judges acting on behalf of the EDD, to award interest, either on the Board's administrative eligibility determination that retroactive unemployment insurance benefits are due, as in this case, or in any administrative proceeding where the enabling statute does not authorize an award of interest.

Moreover, contrary to the assertion of the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), we find no implied power allowing the Board to award interest at any time during the administrative review process. Under the administrative scheme of the Unemployment Insurance Code, the EDD has no underlying monetary obligation to the claimant until it determines the claimant is eligible for the benefits. (See Unemp. Ins. Code, §§ 100 et seq., 1251 [benefits are payable to eligible unemployed individuals].) Once eligibility has been determined, the right to receive benefits vests on the first day of the claimant's entitlement, and the EDD must promptly pay benefits due, regardless of any appeal taken. (Unemp. Ins. Code, §§ 1335, subd. (b), 1326.) Hence, a "wrongful withholding" of benefits, and the corresponding delay in receiving benefits, cannot have legal significance entitling the claimant to prejudgment interest until the Board makes its final decision that the claimant is not entitled to the benefits. Because there is no potential "wrongful withholding" of benefits if the Board determines the claimant is eligible for unemployment insurance benefits, there can be no grounds for filing a mandamus action under Code of Civil Procedure section 1094.5 challenging the Board's favorable decision, and no damages "capable of being made certain" that would give rise to even an implied obligation to award interest on the benefits recovered during the administrative process. Accordingly, only a court may award section 3287(a) prejudgment interest on its judgment following a claimant's successful mandamus action challenging the Board's wrongful withholding of benefits. (Cf. *Tripp*, *supra*, 17 Cal.3d at p. 683.)

In so holding, we abide by the settled principle that administrative law judges, like the agencies authorized to appoint them, may not act as superior court judges, and in excess of their statutory powers, to award interest in administrative eligibility and benefit matters. (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*) [administrative agency may not create remedy Legislature has withheld].) We therefore reverse the Court of Appeal judgment and disapprove *Knight*, *supra*, 26 Cal.App.4th 747, to the extent it conflicts with our decision.

BACKGROUND

1. *Unemployment Insurance Program*

California's unemployment insurance program, as promulgated by the Unemployment Insurance Code, is part of a national system of reserves designed to provide insurance for workers "unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (Unemp. Ins. Code, § 100.) Under the Unemployment Insurance Code, the state participates in a cooperative unemployment insurance program with the federal government, codified as the Federal Unemployment Tax Act. (26 U.S.C. § 3301 et seq.; see Unemp. Ins. Code, § 101 [integration of state and national plans].) Although the federal government has in the past assisted the states in setting up their programs, it recognizes that " '[t]he plan for unemployment compensation that [it] suggest[s] contemplates that the States shall have broad freedom to set up the type of unemployment compensation they wish . . . , [including the ability to determine] [¶] . . . their own waiting periods, benefit rates, maximum-benefit periods, etc.' " (*Ohio Bureau of Employment Services* v. *Hodory* (1977) 431 U.S. 471, 483 [52 L.Ed.2d 513, 523-524, 97 S.Ct. 1898], quoting Rep. of the Com. on Economic Security, as reprinted in Hearings Before the Sen. Com. on Finance on Sen. No. 1130, 74th Cong., 1st Sess., at pp. 1311, 1328 (1935).) The states must, however, administer their unemployment compensation programs in a manner that reasonably ensures full payment of benefits once the administrative agency determines those benefits are due. (42 U.S.C. § 503(a).)

In order to receive benefits, an unemployment insurance claimant applies to the EDD, a branch of the Health and Welfare Agency, which investigates the claim and makes an initial eligibility determination in a nonadversarial setting. (Unemp. Ins. Code, §§ 301, 1326 et seq.) ■ The applicant for unemployment insurance benefits has the burden of establishing eligibility and, as a practical matter, the EDD's initial inquiry "is limited by the necessity for routine, ex parte determinations based upon such information as is reasonably available." (*Jacobs* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 1035, 1040, fn. 7 [102 Cal.Rptr. 364].) Unemployment Insurance Code section 1326 provides: "Claims for unemployment compensation benefits shall be made in accordance with authorized regulations of the director. Except as otherwise provided in this article, the department shall promptly pay benefits if it finds the claimant is eligible or shall promptly deny benefits if it finds the claimant is ineligible."

If the EDD denies an application for benefits, a claimant may file an administrative appeal, which is heard by an administrative law judge. (Unemp. Ins. Code, §§ 1334, 1335, subd. (c); Cal. Code Regs., tit. 22, § 5100 et

seq.) Section 1334 states that "[a]n administrative law judge after affording a reasonable opportunity for fair hearing, shall, unless such appeal is withdrawn, affirm, reverse, modify, or set aside any determination" of eligibility. If the administrative law judge determines the claimant is eligible for benefits, the benefits must be "promptly paid," regardless of any appeal, "by the director, appeals board, or other administrative body or by any court." (Unemp. Ins. Code, § 1335, subds. (a), (b).)[1]

If the administrative law judge denies eligibility on reconsideration, a claimant may, within 20 days of that decision, appeal to the Board, which may take additional evidence. "Not until the appeal to the referee and the ensuing appeal to the [Board] does allocation of the burden of proof become meaningful. (See Unemp. Ins. Code, §§ 1327, 1328, 1334.) At the appellate level the agency has the task of formulating findings which support its decision." (*Jacobs* v. *California Unemployment Ins. Appeals Bd., supra*, 25 Cal.App.3d at p. 1040, fn. 7.) With certain exceptions not applicable here, the Board must affirm, reverse, modify, or set aside the administrative law judge's decision within 60 days after the submission of the appeal. (Unemp. Ins. Code, §§ 401 et seq., 1334, 1336, 1337.)

Pursuant to Unemployment Insurance Code section 413, subdivision (a)(2), the Board may also "remove" the claim to itself for review and decision if it is dissatisfied with the administrative law judge's decision. The Board may designate significant decisions as "precedent decisions," which are published for public reference. (Unemp. Ins. Code, § 409.) These decisions are binding on all administrative law judges. (Unemp. Ins. Code, § 409; see 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, §§ 347-354, pp. 338-344.)

If, after reviewing the EDD's benefit eligibility determination, the Board concludes the claimant is eligible for unemployment insurance compensation, the EDD must pay benefits owed regardless of any further action taken

---

[1] The prompt payment requirement that follows an eligibility determination is mandated by 42 United States Code section 503(a)(1), which requires payment of benefits "when due," and the high court's decision in *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347]. The high court invalidated the EDD practice (pursuant to Unemp. Ins. Code, former § 1335) of stopping benefit payments whenever an employer appealed the EDD's benefit award. The court held that the practice of withholding benefits in the event of appeal violated the claimants' statutory right to receive prompt payment. (*California Human Resources Dept.* v. *Java, supra*, 402 U.S. at p. 133 [28 L.Ed.2d at pp. 674-675].) As the Third Circuit observed, "The critical factor is *timely* payment to *all* eligible persons, whether their eligibility is upheld initially or only after one or more appeals." (*Wilkinson* v. *Abrams* (3d Cir. 1980) 627 F.2d 650, 661, fn. 14 (*Wilkinson*), original italics.) The EDD now pays benefits following a finding of eligibility regardless of any appeal filed by an employer.

by the director or any additional appeals filed. (Unemp. Ins. Code, § 1338.) At this point, the Board has no statutory authority to award interest on the benefits for any inherent delay in the bureaucratic process that occurred while the claimant pursued the administrative claim for benefits, and the Board has consistently acknowledged it lacks the express or implied authority to do so.

Thus, contrary to Justice Kennard's dissent, the Unemployment Insurance Code allows the EDD, and unemployment insurance claimants, a reasonable time to process each legitimate claim. Benefits are not due immediately after a claim is filed following employment termination. Rather, they are due promptly only after a claimant has established benefit eligibility. (*California Human Resources Dept.* v. *Java, supra,* 402 U.S. at p. 133 [28 L.Ed.2d at pp. 674-675].) The statutory scheme thus accounts for the fact that delays are inherent in the entitlement claim review process and are necessary to ensure only those claimants who have established eligibility will receive benefits. Indeed, Justice Kennard's rigid calculation of the benefit due date shows a misreading of federal cases interpreting the prompt payment requirement. The "when due" language of 42 United States Code section 503(a)(1) means that compensation payments are required at the earliest administratively feasible stage of unemployment after giving both the employee and the employer opportunity to be heard. (*California Human Resources Dept.* v. *Java, supra,* 402 U.S. at p. 131 [28 L.Ed.2d at pp. 673-674]; *Wilkinson, supra,* 627 F.2d at p. 661.) The emphasis of the federal legislation, as reflected in the promulgating regulations, is on "prompt and accurate" disposition of unemployment insurance claims, which necessarily depends on a balancing of these factors under the particular circumstances of each case. (*Wilkinson, supra,* 627 F.2d at p. 661.) The delays inherent in this system are not, however, tantamount to a "wrongful withholding" of benefits giving rise to a right to section 3287(a) prejudgment interest once the Board rules in favor of the claimant.

If the Board affirms the denial of eligibility, or on removal decides against the claimant, he or she may then seek a limited trial de novo in the superior court in an administrative mandate proceeding. (Code Civ. Proc., § 1094.5 [review of administrative orders].) During this review, a claimant is not limited to the record before the Board, and the trial court exercises its independent judgment on all the facts material to the claim, regardless of the record of proceedings before the Board. (*Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831, 834 [123 P.2d 457] (*Laisne*).) "[B]ecause the entire judicial power of the state is vested in certain enumerated courts by article III, section 1, and article VI, section 1, of the Constitution of this state," only

a court, in contrast to the Board, has constitutional authority to make final determinations of fact, and indeed must exercise independent judgment on all material facts presented by the claimant. (*Laisne*, *supra*, 19 Cal.2d at p. 834.)

Once the court exercises its independent judgment and determines on mandamus that the Board has *wrongfully withheld* benefits, "a claimant has met all requirements of the act, and all contingencies have taken place under its terms, [the claimant] then has a statutory right to a fixed or definitely ascertainable sum of money. [Citations.]" (*Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501, 504 [247 P.2d 561].) At this point, the claimant has met the requirements of section 3287(a), and may seek prejudgment interest on the mandamus judgment for the delay caused by the Board's wrongful denial of benefits. (See *Tripp*, *supra*, 17 Cal.3d at p. 681.)

█ Those persons denied benefit eligibility are not the only ones allowed to challenge the Board's decision. Pursuant to Unemployment Insurance Code section 409.2, "[a]ny interested person or organization may bring an action for declaratory relief in the superior court . . . to obtain a judicial declaration as to the validity of any precedent decision of the appeals board issued under Section 409 or 409.1." █ This provision is appropriate for the reason that ". . . precedent decisions are akin to agency rulemaking, because they announce how governing law will be applied in future cases. [Citation.]" (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 109 [172 Cal.Rptr. 194, 624 P.2d 244].) The Board's precedent decisions interpret applicable statutes and regulations, and "[t]heir correctness as precedent relates to law and policy, not to adjudicative fact. [Citation.]" (*Ibid.*) Courts will reject the Board's statutory construction when it is contrary to legislative intent. (*Id.* at p. 111.) Nonetheless, in light of the Board's expertise, its interpretation of a statute it routinely enforces is entitled to great weight and will be accepted unless its application of legislative intent is clearly unauthorized or erroneous. (*Ibid.*) Moreover, "[c]ourts may not substitute their judgment for that of the agency on matters within the agency's discretion." (*Ibid.*)

█ If a third person pursues an action against the Board under Unemployment Insurance Code section 409.2, a declaratory judgment in favor of the third person "does not alter the rights of the original parties as determined by the [B]oard. The third person's concern with the decision as precedent provides no basis to disturb the actual award or denial of benefits in a particular case." (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.*, *supra*, 29 Cal.3d at p. 110.) Thus, the modifications of a precedent

benefit decision that follow a reversal of the Board's decision affect the declaratory judgment only and "may not alter the result between the parties." (*Id.* at p. 111; see Unemp. Ins. Code, § 409.1 [Board must modify reversed decision to conform to judgment].)

## 2. *The Kalem Matter*

In the present matter, claimant Toni Z. Kalem sought to "backdate" her unemployment insurance claim to obtain benefits for an earlier period. The EDD denied Kalem's request, and she filed an administrative appeal with the Board.

The administrative law judge hearing the appeal for the Board reversed the EDD's decision and ordered retroactive benefits for the 10-week period between the initial denial of eligibility for retroactive benefits and the subsequent benefit award. Kalem then sought interest from the Board on the 10 weeks of retroactive benefits. The Board, pursuant to Unemployment Insurance Code section 413, subdivision (a)(2), removed the matter to itself for review and decision, and then, under Unemployment Insurance Code section 409, issued a precedent benefit decision (*Matter of Toni Z. Kalem* (1993) Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-476). The Board determined that because it "may not exercise those judicial powers which are reserved to the courts," and is granted statutory authority to make benefit eligibility determinations only, neither the Board nor administrative law judges acting on its behalf have the authority to award section 3287(a) prejudgment interest to a successful claimant who is awarded benefits through the normal course of administrative review.[2]

AFL-CIO, acting as an "interested . . . organization" pursuant to Unemployment Insurance Code section 409.2, filed a complaint for declaratory relief in superior court challenging the Board's precedent benefit decision that only a court has the authority to award prejudgment interest on its judgment reversing the Board's denial of benefit eligibility. (See generally, Code Civ. Proc., §§ 1060-1062.3 [provisions governing declaratory relief].) Exercising its independent judgment, the trial court granted AFL-CIO's motion for judgment on the pleadings, invalidating the Board's precedent benefit decision and concluding that administrative law judges have "the power and the duty" to award prejudgment interest on routine benefit payments. The trial court entered judgment in favor of AFL-CIO and

---

[2]Because we resolve this case on the basis of statutory interpretation, we need not determine whether allowing an administrative law judge to award section 3287(a) interest would violate the judicial powers clause. (Cal. Const., art. VI, § 1.)

ordered the Board to modify its decision to conform to the judgment. (Unemp. Ins. Code, § 409.1.) The Board appealed.

The Court of Appeal affirmed the trial court judgment. It relied on *Knight,* which concluded that administrative law judges may award prejudgment interest on retroactive welfare benefit payments. (*Knight, supra,* 26 Cal.App.4th at pp. 755-756.) The Court of Appeal concluded administrative law judges have the power to award interest on unemployment insurance benefits pursuant to section 3287(a) even though there has been no "wrongful withholding" of benefits because the claimant successfully recovered benefits in the normal course of administrative review. The court rejected the Board's assertion that, by awarding prejudgment interest, administrative law judges would be acting beyond their statutory authority and in contravention of the statutory scheme governing the unemployment insurance administrative process. The Court of Appeal distinguished our decisions in *Dyna-Med, supra,* 43 Cal.3d 1379, and *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40 [276 Cal.Rptr. 114, 801 P.2d 357] (*Peralta*), which held that administrative agencies may not make monetary awards beyond their statutory authority. In so doing, the Court of Appeal ignored the fact that section 3287(a) interest may only be awarded in a mandamus action following the Board's wrongful withholding of benefits. (*Aguilar, supra,* 223 Cal.App.3d at pp. 242-243.) As we explain, the Court of Appeal's analysis fails to justify granting the Board an additional, and potentially costly, monetary power not granted by the Legislature. Accordingly, we conclude we must reverse the Court of Appeal's judgment.

In lieu of filing an opening brief in this court, the Board relies on briefs it submitted in the Court of Appeal, thus raising the identical arguments asserted in that court. (Cal. Rules of Court, rule 29.3(a).) We will address each of the Board's contentions and AFL-CIO's responses after reviewing the development and application of section 3287(a).

DISCUSSION

1. *Section 3287(a)*

Section 3287(a), originally adopted in 1872, allows the award of prejudgment interest as an element of damages and states: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and

interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state." (As amended by Stats. 1955, ch. 1477, § 1, pp. 2689-2690; Stats. 1959, ch. 1735, § 1, p. 4186; Stats. 1967, ch. 1230, § 1, p. 2997.) There is scant pertinent legislative history, but the provision's meaning is clear. ▆ Section 3287(a) allows parties to recover prejudgment interest in damage actions based on a general underlying monetary obligation, including the obligation of a governmental entity determined by way of mandamus. (*Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 624-627 [39 Cal.Rptr. 739, 394 P.2d 579] [wrongfully withheld backpay constitutes damages for purposes of section 3287(a)]; Civ. Code, § 3281 [damages are monetary compensation for one "who suffers detriment from the unlawful act or omission of another"].)

Our decision in *Tripp, supra,* 17 Cal.3d at pages 682-683, held that wrongfully withheld welfare benefits eventually awarded in a mandamus action under the former aid to the needy disabled program (Welf. & Inst. Code, former § 13500 et seq.) amounted to a state monetary obligation that accrued prejudgment interest under section 3287(a). In *Tripp,* the plaintiff filed an administrative mandamus action for benefits after the defendant Director of the Department of Social Welfare denied eligibility on the ground her disability was not permanent. (*Tripp, supra,* 17 Cal.3d at p. 675.) In that action, the trial court concluded the plaintiff's injuries were permanent and that there was no substantial evidence her condition would improve. (*Ibid.*) "The court entered judgment accordingly ordering the issuance of a peremptory writ of mandate directing defendant to set aside his decision of August 28, 1973, in the underlying administrative proceeding and to pay plaintiff benefits retroactively from July 25, 1972, with attorney's fees and interest at the legal rate." (*Tripp, supra,* 17 Cal.3d at pp. 675-676.)

On appeal from the judgment, the director challenged the trial court's decision in our court. Writing for the majority, Justice Sullivan determined the trial court correctly applied the substantial evidence test in awarding plaintiff her retroactive benefits. (*Tripp, supra,* 17 Cal.3d at pp. 676-677.) The court concluded the effective date of plaintiff's entitlement to benefits was "the first day of the month following the date of application." (*Id.* at p. 678.) The court modified the judgment to reflect the proper date of commencement of benefits.

The *Tripp* court next turned to the question whether "the recipient of wrongfully denied welfare benefits is entitled to prejudgment interest," even though the trial court had denied the interest because the Legislature did not

provide for payment of interest following judicial review of benefit determinations. (*Tripp, supra*, 17 Cal.3d at p. 678.) We allowed the interest award after observing: ". . . the fact that the Legislature did not specify interest is not probative on the issue whether it is recoverable under the view that the purpose of [Welfare and Institutions Code] section 10962 [providing for judicial review of administrative benefit decisions] is to ensure access to judicial review and not to define the extent of recovery. [Citation.]" (*Tripp, supra*, 17 Cal.3d at p. 684.) The *Tripp* majority rejected the defendant's contention that the plaintiff was not entitled to interest because ". . . section 10962 makes judicial review under Code of Civil Procedure section 1094.5 plaintiff's 'exclusive remedy' without specifically providing for interest." It concluded, ". . . inasmuch as an aggrieved party must proceed by way of administrative mandamus, the availability of interest as an element of damages remains open. (See Code Civ. Proc., § 1095.)" (*Tripp, supra*, 17 Cal.3d at p. 679, fn. 7.) Recognizing that interest "relates to the extent of recovery inasmuch as it constitutes an element of damages," *Tripp* observed it must determine whether "some other authority" would allow the court to award interest on plaintiff's wrongfully denied benefits. (*Id.* at p. 681.)

The *Tripp* majority concluded that section 3287(a) "authorizes the recovery of interest on damages which are certain or capable of being made certain by calculation, where the right to recover has vested on a particular day." (*Tripp, supra*, 17 Cal.3d at p. 681.) The court observed that the right to benefit payment vests when the claimant has established the facts entitling him or her to the benefits. (*Id.* at p. 683.) *Tripp* awarded the interest for the delay the Director of the State Department of Welfare caused by wrongfully withholding benefits after the hearing officer determined the claimant was entitled to them, "despite the absence of specific statutory authority" for the award under the welfare scheme. (*Id.* at p. 682.) *Tripp* emphasized that the recovery of prejudgment interest under section 3287(a) required an action for damages, which included wrongfully denied benefits. (*Tripp, supra*, 17 Cal.3d at p. 682, fn. 12.) Thus, *Tripp* justified the court's interest award on the "policy rationale" that ". . . it may take long periods of time for an applicant to vindicate his entitlement to aid and in the interval the delay inevitably exacts its toll from that portion of our society least able to bear the deprivation." (*Id.* at p. 683.)

In awarding section 3287(a) interest in the mandamus action, the *Tripp* court refused to consider the defendant's argument "that to award interest under [section 3287(a)] on retroactive benefits to welfare recipients who have been denied benefits but are successful in obtaining them after *judicial* review will discriminate against recipients who have been denied benefits

but are successful in obtaining them after an administrative appeal to the Director." (*Tripp, supra,* 17 Cal.3d at p. 685, fn. 14, original italics.) In declining to address the question, the *Tripp* court observed that it was "not presented with the question whether the latter class of recipients is similarly entitled to interest and do not now decide that question which in our view defendant lacks standing to raise." (*Tripp, supra,* 17 Cal.3d at p. 685, fn. 14.)

Numerous courts have relied on the holding in *Tripp* to support an award of section 3287(a) interest for wrongfully withheld benefits in the context of a mandamus action. (See, e.g., *Olson* v. *Cory* (1983) 35 Cal.3d 390, 402 [197 Cal.Rptr. 843, 673 P.2d 720] [awarding interest on wrongfully withheld backpay and pension]; *Goldfarb* v. *Civil Service Com.* (1990) 225 Cal.App.3d 633, 636 [275 Cal.Rptr. 284] [wrongfully demoted psychologist awarded prejudgment interest on backpay after restoration to former position]; *Aguilar, supra,* 223 Cal.App.3d at pp. 242-243, and cases cited; *Austin* v. *Board of Retirement* (1989) 209 Cal.App.3d 1528, 1532-1534 [258 Cal.Rptr. 106] [prejudgment interest is payable on award of wrongfully withheld disability retirement benefits].)

In *Aguilar, supra,* 223 Cal.App.3d at page 242, the Court of Appeal followed *Tripp*'s reasoning to hold that, once a court in a mandamus action determines the Board has wrongfully withheld unemployment insurance compensation, the claimants who appealed the Board's action may also recover section 3287(a) prejudgment interest as an element of the damages awarded on judicial review. In that case, the EDD denied unemployment insurance benefits to a group of farm workers in 1978 "on the grounds the workers were involved in a trade dispute and were therefore ineligible for unemployment benefits. EDD's determination was upheld by an administrative law judge, the [Board] and in a superior court proceeding." (*Aguilar, supra,* 223 Cal.App.3d at p. 241.)

In 1985, however, the Court of Appeal reversed the Board's decision and remanded the matter to the superior court to determine whether some claimants were eligible to receive benefits under an Unemployment Insurance Code provision allowing workers to receive benefits and refuse new work that was available because of a strike, lockout, or other labor dispute. (See *Campos* v. *Employment Development Dept.* (1982) 132 Cal.App.3d 961 [183 Cal.Rptr. 637].) The superior court in turn remanded the matter to the Board, which in 1987—nine years after the original denial of benefits— concluded that over 30 percent of the claimants were eligible for benefits. (*Aguilar, supra,* 223 Cal.App.3d at p. 241.) EDD paid the benefits to those workers, but refused to pay any interest on the amounts owed. An administrative law judge reversed the EDD's decision and ordered the EDD to pay

interest on the benefits. (*Ibid.*) The Board on administrative appeal "found no authority for payment of interest in the Unemployment Insurance Code and reversed the administrative law judge's ruling." (*Ibid.*) The workers then filed a petition for peremptory writ of mandate in the superior court, which granted the writ and directed the EDD to pay interest on the wrongfully withheld employment benefits. (*Ibid.*) The EDD appealed the court's order, contending that prejudgment interest should not be part of the judgment rendered in the mandamus action. (*Ibid.*) *Aguilar* affirmed the superior court judgment.

Relying on *Tripp, supra,* 17 Cal.3d at pages 680 through 682, *Aguilar* observed that prejudgment interest is payable as part of the damages awarded by a superior court in a mandamus action to recover *wrongfully withheld* benefits. (*Aguilar, supra,* 223 Cal.App.3d at p. 243.) As the *Aguilar* court observed, a claimant's right to interest depends on whether the claimant satisfied the requirements of section 3287(a). (*Aguilar, supra,* 223 Cal.App.3d at p. 244.) *Aguilar* concluded that "[i]n calculating the compensation an unemployed person may receive we believe California is free to include interest on wrongfully denied claims." (*Id.* at p. 245.) Of significance here is the fact that the court in *Aguilar,* like the *Tripp* court, refused to address the question whether benefit claimants may seek interest for the time spent in the routine processing of their benefit eligibility claim, and in the absence of a wrongful denial of benefits by the Board. *Aguilar* simply observed that ". . . the EDD's appeal is from a superior court judgment directing the payment of interest. Plainly, under [*Tripp*] the superior court was empowered to order the agency to pay interest." (*Id.* at p. 246, fn. 4.)

Thus, while not addressing the question whether the Board, or administrative law judges acting on its behalf, may award prejudgment interest on benefits, *Aguilar* does hold that a claimant for unemployment insurance benefits may receive section 3287(a) interest as part of the court's judgment on mandamus concluding that the Board wrongfully withheld benefits. (*Aguilar, supra,* 223 Cal.App.3d at pp. 245-246.) As part of its judgment, the superior court may also order the EDD to pay wrongfully denied benefits retroactive to the date they became due. (*Ibid.*) Because the court has the power to award prejudgment interest on damages under section 3287(a), it may also award prejudgment interest in addition to the wrongfully withheld benefits. As the *Tripp* court observed, the interest awarded compensates claimants for the egregious delay or long period of time required to vindicate their right to aid in the mandamus action. (*Tripp, supra,* 17 Cal.3d at p. 683; see U.S. Dept. of Labor, Unemp. Ins. Program Letter No. 11-92 (Dec. 30, 1991) [because interest is not paid as part of unemployment benefits, but only to compensate for the delay in payment of compensation, it may not be paid from the state unemployment fund, but must be paid as a separate administrative expense].)

Both *Tripp* and *Aguilar,* therefore, awarded interest solely for the delay caused by the necessity of a mandamus action. As the Board observes, neither case supports an award of interest on claims resolved in administrative proceedings. Thus, the statutory scheme for processing unemployment insurance claims (Unemp. Ins. Code, § 100 et seq.), and the strict requirements for allowing even a court to award section 3287(a) interest in a mandamus action (including that the damages result from the wrongful withholding of benefits), compel our conclusion that there is no implied authority granting the Board and administrative law judges acting on behalf of the EDD the power to award section 3287(a) interest as an additional unemployment insurance benefit.

The Board relies, in part, on analogous reasoning in *Dyna-Med, supra,* 43 Cal.3d 1379, and *Peralta, supra,* 52 Cal.3d 40. Both cases discussed the constitutional and statutory limitations on an administrative agency's powers. AFL-CIO, on the other hand, asserts that because both *Tripp* and *Aguilar* held that interest awarded in mandamus actions vests on the date the claimant was entitled to receive payment of unemployment insurance, entitlement to interest is automatic, even though the Unemployment Insurance Code does not provide for it. AFL-CIO argues, "[w]orkers therefore are entitled to interest on retroactive compensation recovered in administrative appeals no less than on retroactive compensation recovered in Court." AFL-CIO urges us to uphold the Court of Appeal judgment allowing the Board to pay prejudgment interest in this case, and to adopt the Court of Appeal's reasoning in *Knight, supra,* 26 Cal.App.4th 747, which ruled that administrative law judges were authorized to award prejudgment interest on welfare benefits.

As we explain, we agree with the Board. Had the Legislature intended to grant the Board and administrative law judges acting on behalf of the EDD the power to award prejudgment interest on benefit payments, it could have easily done so, as it has in other administrative contexts. (See, e.g., Welf. & Inst. Code, § 14171, subd. (h) [allowing Medi-Cal provider to recover interest on successful administrative appeal of disallowed payment]; see also Gov. Code, § 926.10 [interest on liquidated tort claims against public agency commences on 61st day after claim filed].) We will not infer from inapposite provisions of the Unemployment Insurance Code, however, that by allowing the superior court to award interest on wrongfully withheld benefits, the Legislature intended by implication to grant the Board the same authority to award interest merely because at some point in the administrative process someone made an error that the administrative agency (here, the Board) itself corrected.

## 2. *Dyna-Med and Peralta*

In *Dyna-Med, supra,* 43 Cal.3d 1379, the sole question before us was whether the Fair Employment and Housing Act (FEHA) granted the Fair Employment and Housing Commission (FEHC) the authority to award punitive damages. We observed that resolution of the issue depended on the meaning of Government Code former section 12970, subdivision (a), which set forth the scope of relief available from the FEHC. (*Dyna-Med, supra,* 43 Cal.3d at p. 1385.) That section then provided: "If the commission finds that a respondent has engaged in any unlawful practice under this part, it shall state its findings of fact and determination and shall issue . . . an order requiring such respondent to cease and desist from such unlawful practice and to take such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of this part, and including a requirement for report of the manner of compliance." (Gov. Code, former § 12970, subd. (a); Stats. 1984, ch. 1754, § 3, p. 6406.)

The *Dyna-Med* majority concluded that the FEHC did not have authority to award punitive damages, observing that the statutorily authorized remedies under the FEHA—"hiring, reinstatement, upgrading with or without back pay, restoration to membership in a respondent labor organization—are exclusively corrective and equitable in kind. They relate to matters which serve to make the aggrieved employee whole in the context of the employment." (*Dyna-Med, supra,* 43 Cal.3d at p. 1387.) We rejected the Court of Appeal's conclusion that the enabling statute impliedly authorized the FEHC to award punitive damages because " '. . . the Legislature delegated broad authority to the [FEHC] to fashion appropriate remedies for unlawful employment practices in [Government Code former] section 12970, subdivision (a) . . . .' " (*Dyna-Med, supra,* 43 Cal.3d at p. 1385.)

*Dyna-Med* declined to grant the FEHC a power not conferred by an enabling statute, in particular observing that "[a]n administrative agency cannot by its own regulations create a remedy which the Legislature has withheld. [Citations.]" (*Dyna-Med, supra,* 43 Cal.3d at p. 1389.) We then rejected the argument that the failure to allow identical remedies in the judicial and quasi-judicial forums amounted to a denial of equal protection, observing, ". . . neither policy considerations nor equal protection concerns require that the administrative and judicial remedies be identical. To the contrary, the separate avenues justify different remedies." (*Id.* at p. 1402.) *Dyna-Med* specifically reaffirmed the rule that administrative regulations

purporting to enlarge the scope of administrative powers are void, and that courts are obligated to strike them down. (*Id.* at p. 1389; cf. *Peralta, supra,* 52 Cal.3d 40.)

Thus, although we agreed in *Dyna-Med* that under Civil Code section 3294, a court could award punitive damages, we refused to grant the administrative agency the same power in the absence of specific legislative direction. *Dyna-Med* concluded that "[a]bsent express language dictating otherwise, it will not be presumed that the Legislature intended to authorize an administrative agency—free of guidelines or limitation—to award punitive damages in proceedings lacking the protections mandated in a court of law." (*Dyna-Med, supra,* 43 Cal.3d at p. 1392.)

We reached a similar conclusion on the limitation of agency powers in *Peralta, supra,* 52 Cal.3d 40. There we observed that the sole issue before us was "whether under the employment discrimination provisions of the FEHA, which make no reference to compensatory or any damages, the [FEHC] has the authority to award . . . compensatory damages, or must an employee who seeks such damages pursue his or her judicial remedies in a court action." (*Peralta, supra,* 52 Cal.3d at p. 48.) Relying on our decision in *Dyna-Med, supra,* 43 Cal.3d 1379, the *Peralta* majority concluded that the legislative objective of providing for speedy relief unburdened with procedural technicalities did not justify allowing the FEHC to award compensatory damages that could be awarded in a private court action. (*Peralta, supra,* 52 Cal.3d at p. 54.) Noting that the FEHA provides for "alternative routes" to resolution of claims, we emphasized the fact that ". . . a primary purpose of the alternative systems of redress for employment discrimination is to permit efficient and prompt administrative disposition—without cost to the victim—of claims that are amenable to conciliation or to corrective equitable remedies, and thus do not warrant a full-scale judicial proceeding with its attendant expense and delay [citation], while reserving to the judicial system, with its attendant constitutional and statutory safeguards, those statutory claims that seek significant nonquantifiable monetary recompense or that the complainant wishes to join with nonstatutory causes of action." (*Peralta, supra,* 52 Cal.3d at p. 55, fn. omitted.) Thus, we concluded that in enacting the FEHA, the Legislature did not "intend to authorize the Commission to adjudicate noneconomic general damage claims traditionally awarded in judicial actions between private parties [citations]." (*Id.* at p. 56.)

Both *Dyna-Med* and *Peralta* are instructive, and their analyses of the restrictions on administrative agency power apply equally here. As the Board observes, the function of the administrative law judge in a proceeding to

recover unemployment insurance benefits is simply to determine if claimants are eligible and then, if so, to calculate benefits owed based on length of employment. (Unemp. Ins. Code, § 301, subd. (b).) At the administrative level benefits are not calculated on the basis of wrongdoing or delay. Their calculation involves a simple step process enacted to generate "a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (Unemp. Ins. Code, § 100 [statement of public policy].)

As we explained *ante,* at pages 1024 through 1027, the initial mandatory process the Unemployment Insurance Code created contemplates only an administrative determination of benefit eligibility that requires at least an initial application to the EDD and, in some cases, second review by an administrative law judge. Claimants may not argue that their benefits have been *wrongfully* withheld until the Board erroneously determines they are ineligible, requiring them to seek administrative mandamus review in superior court. Until then, no wrongful withholding of benefits or delay attributable to the administrative process occurs. The Unemployment Insurance Code does not give the Board or its administrative law judges the statutory authority to award interest on an administrative award of benefits, and we cannot, by judicial fiat, create such authority. That determination is a matter for the Legislature.

### 3. *Knight*

In *Knight,* a majority of the Court of Appeal relied on *Tripp, supra,* 17 Cal.3d 671, to conclude that administrative law judges may award section 3287(a) interest in the same proceeding in which they issue an award of retroactive in-home supportive services (Welf. & Inst. Code, § 10950 et seq.), because the interest is simply "a part of the underlying benefit to which a recipient is entitled." (*Knight, supra,* 26 Cal.App.4th at p. 754.) *Knight* acknowledged that administrative agencies have only those powers that the Constitution or statutes have conferred on them. (E.g., *B. W. v. Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219, 234 [215 Cal.Rptr. 130].) *Knight* concluded, however, that the Department of Social Services' power to award benefits included the implied power to award prejudgment interest on those benefits. (*Knight, supra,* 26 Cal.App.4th at p. 754.)

The *Knight* majority's principal rationale for this conclusion is that the purpose of an administrative hearing is to provide a speedy and informal

manner of challenging an administrative action that may reduce or terminate vitally needed benefits. (*Knight, supra,* 26 Cal.App.4th at pp. 755-756.) The court reasoned, "If interest is part of the 'damage' to a recipient by not being awarded benefits in a timely fashion, then an award of interest is no different than an award of the benefits withheld. It is no more an exercise of 'judicial power' by the administrative hearing officer than the award of benefits." (*Id.* at p. 756.) Moreover, the *Knight* majority concluded, "[a]llowing the matter of interest to be decided at the administrative hearing not only prevents courts from being burdened with matters that can be resolved adequately in administrative fora, but also prevents delay and unnecessary expense in vindication of legal rights through a multiplicity of proceedings. [Citations.]" (*Id.* at pp. 755-756.)

Justice Yegan's dissent in *Knight* criticized the majority for acting as a "super-legislature" in giving administrative law judges a power not granted by the Legislature. (*Knight, supra,* 26 Cal.App.4th at p. 758 (dis. opn. of Yegan, J.).) Although Justice Yegan observed that the majority's result was probably "consistent with administrative and judicial economy," he concluded that such an effect could not justify stretching "the law to achieve a desirable result." (*Id.* at pp. 757, 759.)

We agree with Justice Yegan to the extent that he noted we should not sit as a super-legislature in modifying a statutory scheme that has never given administrative law judges the power to award section 3287(a) interest in the absence of a mandamus action awarding damages for the wrongful withholding of benefits. The *Knight* court's reliance on *Tripp* was misplaced. *Tripp* simply directed the trial court in the mandamus proceeding to award the section 3287(a) interest after it determined that the Director of the Department of Social Welfare had wrongfully withheld welfare benefits. (*Tripp, supra,* 17 Cal.3d at p. 685.) The *Tripp* court even commented that an aggrieved party *must proceed by way of administrative mandamus* in order to challenge a wrongful denial of benefits. (*Id.* at p. 679, fn. 7.) Thus, as we observed on page 1034, *ante,* and contrary to the dissents of Justices Mosk and Kennard, *Tripp*'s concerns are not implicated in this case. Neither the *Tripp* court, nor any of its progeny (except *Knight*), considered whether administrative law judges have the authority to award section 3287(a) interest in the absence of wrongful action by the administrative agency. (*Tripp, supra,* 17 Cal.3d at p. 685, fn. 14.) Moreover, the federal prompt payment requirement of 42 United States Code section 503(a)(1), as construed in *California Human Resources Dept.* v. *Java, supra,* 402 U.S. at page 131 [28 L.Ed.2d at pages 673-674], provides sufficient incentive for the EDD to dispose of claims promptly and accurately without resort to the

threat of interest. (See also *Wilkinson, supra,* 627 F.2d at p. 661.) ▮ As we have often observed, ". . . cases are not authority for propositions not considered." (*Fricker* v. *Uddo & Taormina Co.* (1957) 48 Cal.2d 696, 701 [312 P.2d 1085].)

▮ *Knight*'s reliance on *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245 [284 Cal.Rptr. 718, 814 P.2d 704] is also not persuasive. There, we concluded that the FEHA (Gov. Code, § 12987 et seq.), which authorized the FEHC to award "actual damages," included awards for special damages and other restitutionary relief, including out-of-pocket expenses. (*Walnut Creek Manor* v. *Fair Employment & Housing Com., supra,* 54 Cal.3d at pp. 255, 263.) By contrast, the Unemployment Insurance Code contains restrictive provisions outlining the Board's statutory authority to compute benefits owed. We agree with AFL-CIO that we should not necessarily limit an agency's powers to those expressly granted, because the statutory scheme may "necessarily imply" those powers. (See, e.g., *Rich Vision Centers, Inc.* v. *Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 114 [192 Cal.Rptr. 455] [agency may exercise additional powers necessary for efficient administration of express statutory powers]; see also *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 824-825 [258 Cal.Rptr. 161, 771 P.2d 1247].) But as we have shown, the Unemployment Insurance Code provisions strictly limit the powers of administrative law judges to determine eligibility and compute benefits. They do not grant either express or implied authority to award interest on benefit computations for the inconsequential delay that occurs when a claimant pursues entitlement benefits in the normal course of administrative review. (See, e.g., Unemp. Ins. Code, §§ 310, 1275.)

*Knight* also concluded that our opinions in *Lentz* v. *McMahon* (1989) 49 Cal.3d 393, 403-404 [261 Cal.Rptr. 310, 777 P.2d 83] (*Lentz*), and *Dyna-Med, supra,* 43 Cal.3d 1379, supported its result. (*Knight, supra,* 26 Cal.App.4th at p. 756.) *Lentz* held that an administrative board's application of equitable estoppel in a county welfare agency action to recoup overpayments from welfare recipients did not constitute an impermissible exercise of a "judicial power" within the meaning of article VI, section 1, of the California Constitution. (*Lentz, supra,* 49 Cal.3d at p. 405.) In so holding, the *Lentz* court distinguished in part our decision in *Dyna-Med* in which we held that the FEHA did not authorize the FEHC to award punitive damages in an employee discrimination case, but limited awards to corrective, equitable, nonpunitive remedies. (*Dyna-Med, supra,* 43 Cal.3d at p. 1387.) According to *Lentz,* the *Dyna-Med* rule did not apply to equitable remedies. (*Lentz, supra,* 49 Cal.3d at p. 404.) *Lentz* observed that *Dyna-Med* specifically

distinguished an award of " 'back pay' " from an award of punitive damages because the former remedy was " 'corrective and equitable in kind.' " (*Lentz, supra,* 49 Cal.3d at p. 404.) Moreover, the *Lentz* court opined, "The Legislature's designation of the hearing as the only forum for public-benefits claims supports the view that it intended all potential issues affecting such claims to be raised in that forum." (*Ibid.*) The *Lentz* court also noted, ". . . if equitable estoppel claims were not considered in [Department of Social Services] hearings, no record and findings thereon reviewable under Code of Civil Procedure section 1094.5 would be produced. If that were the case, the doctrine of exhaustion of administrative remedies might be inapplicable to such claims, and claimants would be allowed to bring ordinary mandamus actions against the director under Code of Civil Procedure section 1085. [Citation.] The practical problems of requiring or permitting a claimant to seek ordinary mandamus relief in order to assert a claim of equitable estoppel—with evidentiary court hearings and the attendant inconvenience and expense to the parties and the judicial system—would contravene the purpose of the statutory scheme, if not the express provision that review under Code of Civil Procedure section 1094.5 'shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision.' [Citation.]" (*Lentz, supra,* 49 Cal.3d at p. 404, fn. 8.)

As the Board observes, the question whether an estoppel defense should apply in an administrative hearing in which the government seeks to recoup overpayments to welfare recipients differs markedly from the question whether we should allow administrative law judges to award prejudgment interest in the absence of legislative authority. The awarding of section 3287(a) interest, in contrast to the availability of estoppel as a defense, would be inconsistent with the Legislature's apparent intent that the Unemployment Insurance Code simply do no more than compensate those who, through no fault of their own, are unemployed. (Unemp. Ins. Code, § 100.) Unlike the situation the *Lentz* court faced, here the government has not acted to recoup benefits it previously considered itself estopped from recovering "in order to alleviate harsh consequences of recoupment when overpayment was caused by agency error." (*Lentz, supra,* 49 Cal.3d at p. 397.) As the *Lentz* court noted, by refusing to allow welfare recipients facing recoupment demands to invoke the defense of equitable estoppel to compensate for "agency error," the Department of Social Services was reversing a long-standing policy. (*Ibid.*) By contrast, the Board, following the Unemployment Insurance Code, has never wavered from its position that it has no power, in the absence of a judgment (or other court directive), to award prejudgment interest on its award of unemployment insurance benefits. All cases before the *Knight* decision discussed these awards in the context of administrative

mandamus. (*Aguilar, supra,* 223 Cal.App.3d 239.) We do not believe *Lentz* supports the *Knight* court's departure from such a broad spectrum of authority.

Finally, contrary to the Court of Appeal and the dissents here, the *Knight* court's attempt to distinguish *Dyna-Med, supra,* 43 Cal.3d 1379, is not persuasive. As the Board observes, the statutory scheme under the Unemployment Insurance Code is even more limited in scope than the FEHA, which governed the issue in *Dyna-Med.* (Cf. *Peralta, supra,* 52 Cal.3d 40 [FEHC may not award compensatory damages].) Indeed, the *Knight* court simply overlooks the express statement of the *Dyna-Med* court that an administrative agency cannot impose a remedy the Legislature has withheld. (*Dyna-Med, supra,* 43 Cal.3d at p. 1389.)

We find the same rule must apply to an administrative agency that, sub silentio, attempts to expand or enlarge its power in the absence of either express or implied legislative authority. Indeed, the *Dyna-Med* court observed that if it were to grant the commission additional powers in the absence of legislative directive, its rule "would authorize every administrative agency granted remedial powers to impose punitive damages so long as the statute directs that its provisions are to be liberally construed to effectuate its purposes." (*Dyna-Med, supra,* 43 Cal.3d at p. 1389, fn. omitted.) Similarly, if we were to allow the Board, and administrative law judges sitting on behalf of the EDD, to award prejudgment interest to successful claimants in the absence of either express or implied legislative authority, we potentially would be authorizing every administrative agency granted remedial powers to impose section 3287(a) interest, without consideration of the requirements for the award or the agency's authority to make it. In the absence of the requisite authority, we cannot expand the powers of the EDD or administrative law judges charged only with determining eligibility and computing benefits under the Unemployment Insurance Code by finding an implied power to award section 3287(a) interest. (See *Dyna-Med, supra,* 43 Cal.3d at p. 1389; *Cemetery Board* v. *Telophase Society of America* (1978) 87 Cal.App.3d 847, 858 [151 Cal.Rptr. 248] [courts may not supply statutory language that Legislature omitted].) We disapprove *Knight, supra,* 26 Cal.App.4th 747, to the extent it conflicts with our analysis of the issue.

### 4. *Federal Law*

As an alternative argument, AFL-CIO and its amici curiae (members of a class action in a coordinated proceeding pending in the Court of Appeal) assert that a conclusion that section 3287(a) does not allow administrative

law judges to award prejudgment interest on benefit claims made under the Unemployment Insurance Code conflicts with federal law requiring interest to be paid on public assistance benefits as soon as administratively feasible. By way of example, AFL-CIO and amici curiae cite to 42 United States Code section 503(a)(1), which, we have noted, mandates that a state's method of administering its unemployment insurance program must reasonably insure full payment of unemployment compensation "when due." (42 U.S.C. § 503(a)(1); see *California Human Resources Dept.* v. *Java, supra,* 402 U.S. 121, 135 [28 L.Ed.2d 666, 675-676] [invalidating state's practice of delaying payment of benefits pending resolution of administrative appeal].)

As noted (p. 1025, fn. 1, *ante*), in *California Human Resources Dept.* v. *Java, supra,* 402 U.S. at page 135 [28 L.Ed.2d at pages 675-676], the Supreme Court directed that compensation, including benefits owed, must be paid as soon as possible under the administrative scheme, once eligibility has been determined. The case does not even discuss the payment of prejudgment interest on wrongfully withheld benefits. Thus, federal law mandates that states not delay payment of unemployment insurance benefits when due following an administrative determination of claimant eligibility. (*California Human Resources Dept.* v. *Java, supra,* 402 U.S. at p. 133 [28 L.Ed.2d at pp. 674-675].) Nothing in 42 United States Code section 503(a)(1) or *Java* requires state administrative law judges to award prejudgment interest in administrative hearings determining benefit eligibility for unemployment insurance compensation, and those authorities do not support AFL-CIO's argument.

■ As we have shown, it is well settled that administrative agencies have only the powers conferred on them, either expressly or by implication, by Constitution or statute. (*Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103 [77 Cal.Rptr. 224, 453 P.2d 728].) An administrative agency must act within the powers conferred upon it by law and may not act in excess of those powers. (*Id.* at p. 104.) Actions exceeding those powers are void, and administrative mandate will lie to nullify the void acts. (*Aylward* v. *State Board etc. Examiners* (1948) 31 Cal.2d 833, 839 [192 P.2d 929].) ■ Section 3287(a), even when harmonized with the Unemployment Insurance Code provisions governing payment of unemployment benefits, does not confer on the Board or administrative law judges the power to award prejudgment interest in a proceeding in which they conclude a claimant is eligible for unemployment insurance benefits.

### CONCLUSION

We conclude that administrative law judges do not have statutory authority to award section 3287(a) interest on a routine award of retroactive

unemployment insurance benefit payments. Pursuant to section 3287(a), and the provisions of the Unemployment Insurance Code, only a court may award prejudgment interest on its judgment following a mandamus action to recover benefits wrongfully withheld by Board. As the Legislature has refused to give administrative law judges either express or implied authority to award prejudgment interest, we must exercise judicial restraint in declining to find that authority in the Unemployment Insurance Code. Accordingly, we reverse the Court of Appeal judgment.

George, C. J., Baxter, J., and Brown, J., concurred.

**MOSK, J.,** Dissenting.—The "overriding legislative objective" (*Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 498 [108 Cal.Rptr. 1, 509 P.2d 945]) of the unemployment insurance law is to establish "a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (Unemp. Ins. Code, § 100.) Accordingly, we have held that "[t]he provisions of the Unemployment Insurance Code must be liberally construed to further the legislative objective of reducing the hardship of unemployment." (*Gibson*, *supra*, 9 Cal.3d at p. 499.) We should do likewise with the Civil Code. Instead, today's decision undermines the principle stated in *Gibson* because it "defeats the legislative objective of providing prompt administrative adjudication of claims for unemployment benefits without recourse to technical and formal requirements." (*Id.* at p. 496.) I therefore dissent.

When the state wrongfully refuses to pay unemployment benefits, the applicant is entitled to interest on them. (*Aguilar* v. *Unemployment Ins. Appeals Bd.* (1990) 223 Cal.App.3d 239 [272 Cal.Rptr. 696].) "Civil Code section 3287, subdivision (a), . . . authorizes the recovery of interest on damages which are certain or capable of being made certain by calculation, where the right to recover has vested on a particular day." (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 681 [131 Cal.Rptr. 789, 552 P.2d 749] (*Tripp*), overruled on another ground in *Frink* v. *Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476] (plur. opn.); accord, 31 Cal.3d at p. 181 (conc. opn. of Mosk, J.).) Defendant concedes that Civil Code section 3287 authorizes an award of interest on wrongfully denied unemployment benefits.

The narrow question this case presents is whether the applicant must incur the expense and delay of going to court to receive such interest. I conclude that the law envisions, and public policy is most faithfully served by, a rule

that an administrative agency may award interest. (See *Sandrini Brothers* v. *Agricultural Labor Relations Bd.* (1984) 156 Cal.App.3d 878 [203 Cal.Rptr. 304].) I would so hold here. I cannot believe that the Legislature intended to require individual applicants to file suit in court to recover the relatively small sum represented by interest on benefits, because to so require would be effectively to bar them from recovering interest at all.

"[T]he right to payment of benefits vests when the claimant has established the facts which entitle him to the benefits." (*Aguilar* v. *Unemployment Ins. Appeals Bd.*, *supra*, 223 Cal.App.3d at p. 245.) Stated otherwise, the state's "obligation becomes a debt due as of the date an applicant is first entitled to receive aid." (*Tripp*, *supra*, 17 Cal.3d at p. 682 [discussing welfare benefits].)

Hence for purposes of awarding interest those benefits are wrongfully withheld when initially denied, rather than when all administrative procedures are exhausted and a court rules that they should have been awarded. The applicant has lost the interest rightfully due him or her, and thus it is correct to treat the interest "not [as] a supplemental benefit but rather [as] a part of the underlying benefit to which a recipient is entitled." (*Knight* v. *McMahon* (1994) 26 Cal.App.4th 747, 754 [31 Cal.Rptr.2d 832] (*Knight*).) "Interest . . . relates to the extent of recovery inasmuch as it constitutes an element of damages." (*Tripp*, *supra*, 17 Cal.3d at p. 681.)

Given that interest is due an applicant "as of the date an applicant is first entitled to receive aid" (*Tripp*, *supra*, 17 Cal.3d at p. 682) when his or her application is wrongfully rejected, the question remains who may undertake the ministerial task of awarding that interest.

Civil Code section 3287, subdivision (a), implies that an administrative agency may do so. In relevant part it provides, without reference to a judgment by a court, that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." By contrast, subdivision (b) of Civil Code section 3287 provides: "Every person who is entitled *under any judgment* to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date *prior to the entry of judgment* as the court may, in its discretion, fix, but in no event earlier than the date the action was filed." (Italics added.) "When a statute omits a provision which another statute embracing a similar subject includes, a different legislative intent for each statute is indicated." (*In re*

*Khalid H.* (1992) 6 Cal.App.4th 733, 736 [8 Cal.Rptr.2d 414].) The Legislature did not intend to require a judgment before interest could be awarded under subdivision (a) of Civil Code section 3287.

Moreover, as a matter of policy it is inefficient to require an applicant to proceed to court at considerable expenditure of money, time and court resources so that a judge can exercise the rote function of calculating interest. The majority's result imposes a gross judicial diseconomy. "The general principle that courts should not be burdened with matters which can be adequately resolved in administrative [forums], frequently expressed in the rule requiring exhaustion of administrative remedies [citations], is founded at least in part on the wisdom of the efficient use of governmental resources. [Citation.] Such use serves the twin goals of avoiding delay and unnecessary expense in vindication of legal rights." (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 680-681 [170 Cal.Rptr. 484, 620 P.2d 1032].)

It is not a function of the judiciary to compute sums certain in a proceeding with no controversy requiring resolution. In the different but analogous context of *Tripp, supra,* 17 Cal.3d at page 682, we observed that "the entire scheme of our welfare laws serves to promote certainty as to the amount of benefits payable by setting forth fixed payment schedules. [Citation.] Once an applicant's entitlement to benefits is established, the calculation of the amount of such benefits becomes a mechanical exercise of applying the appropriate standard of assistance. The recovery of wrongfully withheld benefits thus is not subject to the uncertainty that would otherwise bar an award of interest." As the Court of Appeal herein explained, "no discretion is involved in an award of interest. Once an [administrative law judge (ALJ)] determines that retroactive compensation is due, the ALJ must award interest under Civil Code section 3287, subdivision (a). And second, the calculation of the interest due does not involve judgment—it requires simple arithmetic or reference to established tables." (See Unemp. Ins. Code, § 1280, subds. (a), (d) [schedule of benefits].)

Under these circumstances, the only reasonable policy is to allow resolution of the issue of interest at the administrative level. "Allowing the matter of interest to be decided at the administrative hearing not only prevents courts from being burdened with matters that can be resolved adequately in administrative fora, but also prevents delay and unnecessary expense in vindication of legal rights through a multiplicity of proceedings." (*Knight, supra,* 26 Cal.App.4th at pp. 755-756.)

Today's decision also runs counter to notions of simple fairness to applicants for unemployment benefits. The practical result is to deny them

interest to which they are entitled, and although the majority make some cogent observations about certain fine points of legislative intent, they miss the key conclusion: that the Legislature could not have intended such a result. As *Knight* observed, "[t]he right to interest on retroactive public assistance benefits would become meaningless if public assistance claimants did not have an administrative forum to raise such a claim, given their limited access to legal services. It is tantamount to denying a hearing on the recipient's right to interest." (26 Cal.App.4th at pp. 756-757.) So it is with unemployment insurance applicants: it can hardly be said that they are in a much better position than public assistance applicants to vindicate their rights. " 'The [unemployment insurance] law deals with a class of persons for whom the Legislature has expressed a particular concern and with a class of persons who are highly unlikely to be skilled either in law or in semantics and, thus, particularly dependent on the administrative agency to help them in securing the benefits that the law provides.' " (*Gibson* v. *Unemployment Ins. Appeals Bd.*, *supra*, 9 Cal.3d at pp. 498-499.)

With regard to the question whether awarding interest in an administrative forum violates the state Constitution's judicial power or separation of powers clauses (Cal. Const., art. VI, § 1; *id.*, art. III, § 3), the answer is no. "If [loss of] interest [income] is part of the 'damage' to a recipient by not being awarded benefits in a timely fashion, then an award of interest is no different than an award of the benefits withheld. It is no more an exercise of 'judicial power' by the administrative hearing officer than [is] the award of benefits." (*Knight*, *supra*, 26 Cal.App.4th at p. 756.)

Because the Legislature clearly did not intend that unemployment insurance applicants be denied interest lawfully due them, one would hope it will address the issue presented in this case to correct the majority's erroneous result.

Werdegar, J., concurred.

**KENNARD, J.**—I dissent. The majority holds that the state need not pay interest on retroactive unemployment compensation when an erroneous determination of noneligibility is reversed on administrative appeal. To justify this holding, the majority has seized on a phrase from this court's opinion in *Tripp* v. *Swoap* (1976) 17 Cal.3d 671 [131 Cal.Rptr. 789, 552 P.2d 749], invested it with a meaning the *Tripp* court never intended it to have, and by this means invented a new requirement for recovering interest under Civil Code section 3287, subdivision (a) (hereafter section 3287(a)). In the process, the majority decides an issue that was uncontested and unbriefed in this litigation.

The right to receive unemployment compensation vests when the claimant proves facts establishing eligibility. (*Aguilar* v. *Unemployment Ins. Appeals Bd.* (1990) 223 Cal.App.3d 239, 245 [272 Cal.Rptr. 696].) If, despite the claimant's proof of eligibility, the California Employment Development Department (EDD) erroneously denies the claim, the claimant may take an administrative appeal and, if unsuccessful there, obtain judicial review. Once the EDD's error in denying eligibility has been acknowledged and corrected, either by administrative appeal or by judicial review, the claimant is entitled to receive the benefits retroactive to the date of vesting. To compensate for the delay in payment during the administrative appeal and judicial review, the claimant is entitled under section 3287(a) to interest on the retroactively awarded benefits from the date of vesting. (*Aguilar* v. *Unemployment Ins. Appeals Bd.*, *supra*, 223 Cal.App.3d 239, 240, 245-246.)

The issue this court granted review to decide was whether, when an erroneous determination of noneligibility is reversed on administrative appeal, the Unemployment Insurance Appeals Board (the Board), or an administrative law judge acting on the Board's behalf, may include the interest in an award of retroactive benefits. In both the trial court and the Court of Appeal, and in this court as well, the Board has conceded that section 3287(a) entitles the claimant to interest in this situation, but it has taken the position that only a court has the authority to make the interest award. (See *Aguilar* v. *Unemployment Ins. Appeals Bd.*, *supra*, 223 Cal.App.3d 239, 246, fn. 4 [declining to address this issue].)[1] Both the trial court and the Court of Appeal concluded, to the contrary, that the Board (and administrative law judges acting for the Board) have authority to make the interest award.

Reversing the Court of Appeal, the majority goes outside the issue as framed by the parties to hold that the claimant may not recover interest at all,

---

[1] The majority cites *Aguilar* v. *Unemployment Ins. Appeals Bd.*, *supra*, 223 Cal.App.3d 239, for the proposition that "section 3287(a) interest may only be awarded in a mandamus action following the Board's wrongful withholding of benefits." (Maj. opn., *ante*, at p. 1029.) In fact, *Aguilar* contains no such holding.

In that case, after the Board had denied benefits to a group of farm workers, administrative mandamus proceedings resulted in a remand to the Board for further proceedings, after which the Board awarded benefits to some of the claimants but refused to award interest. The claimants sought judicial review of the Board's decision *awarding benefits but declining to award interest.* The trial court issued a writ of mandate directing the Board to pay interest; the Board appealed. (*Aguilar* v. *Unemployment Ins. Appeals Bd.*, *supra*, 223 Cal.App.3d 239, 240-241.)

With the case in this posture, the Court of Appeal concluded that the trial court, in the administrative mandamus proceeding, had properly awarded interest. Replying to the Board's assertion that it lacked authority to award interest, the court said only this: "*Although we do not necessarily accept the limitation* [*the Board*] proposes, we note the [Board]'s appeal is from a superior court judgment directing the payment of interest. Plainly, under *Tripp* v. *Swoap* the superior court was empowered to order the agency to pay interest." (*Aguilar* v. *Unemployment Ins. Appeals Bd.*, *supra*, 223 Cal.App.3d 239, 246, fn. 4, italics added.)

either from a court or from the Board, if the EDD's erroneous determination of noneligibility is corrected, and the retroactive benefits awarded, on administrative appeal. The majority concludes that a claimant may recover interest only when an erroneous determination of noneligibility is corrected on *judicial* review.

As support for this holding, the majority offers this reasoning: (1) Interest may be awarded under section 3287(a) only when benefits are "wrongfully denied"; (2) benefits awarded retroactively by administrative appeal after an erroneous determination of noneligibility have not been "wrongfully denied"; and, therefore, (3) interest may not be awarded under section 3287(a) on retroactive benefits awarded by administrative appeal after an erroneous determination of noneligibility. The authorities that the majority cites provide no support for this reasoning.

The phrase "wrongfully denied" does not appear in section 3287(a). That provision reads: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

As this court has explained, section 3287(a) imposes three requirements for an award of interest: (1) "an underlying monetary obligation," (2) an amount due under that obligation that is "certain or capable of being made certain by calculation," and (3) vesting of the right of recovery "on a particular day." (*Tripp* v. *Swoap, supra*, 17 Cal.3d 671, 682.) Each of these requirements is satisfied when an erroneous determination of noneligibility prevents timely payment of unemployment compensation: (1) the state has a "monetary obligation" to pay unemployment compensation to all persons who demonstrate eligibility, (2) the amount of compensation due is certain or capable of being made certain by calculation, and (3) the right to receive unemployment compensation vests on a particular day (that is, upon proof of eligibility). (*Aguilar* v. *Unemployment Ins. Appeals Bd., supra*, 223 Cal.App.3d 239, 245.) These three requirements are satisfied irrespective of the means by which an erroneous determination of noneligibility is corrected—administrative appeal or judicial review.

The majority concedes that the three statutory requirements are satisfied, and interest must be awarded, when a claimant obtains retroactive unemployment compensation benefits by judicial review, but it asserts that the

EDD need not pay any interest when retroactive benefits are awarded on administrative appeal. To justify this result, the majority adds a fourth, nonstatutory requirement, that the benefits be "wrongfully denied" or "wrongfully withheld." The majority asserts that unemployment compensation has not been "wrongfully denied" or "wrongfully withheld" unless and until the unemployment compensation claim has been denied by the Board itself. The majority attributes this nonstatutory requirement to this court's opinion in *Tripp* v. *Swoap, supra,* 17 Cal.3d 671.

The phrases "wrongfully withheld" and "wrongfully denied" do appear in this court's opinion in *Tripp,* but not as an additional nonstatutory requirement for an interest award under section 3287(a). *Tripp* was an action in administrative mandamus (Code Civ. Proc., § 1094.5) to review a decision by the Director of the State Department of Social Welfare denying an application for welfare benefits under the aid to the needy disabled (ATD) program based on a determination that the applicant had not proved she was permanently disabled. The trial court ruled that this determination was not supported by substantial evidence, and it directed that the applicant receive the benefits retroactively with attorney fees and interest. (*Tripp* v. *Swoap, supra,* 17 Cal.3d 671, 675-676.)

On appeal, this court agreed that "the recipient of *wrongfully withheld* welfare benefits" (*Tripp* v. *Swoap, supra,* 17 Cal.3d 671, 678, italics added) was entitled to interest under section 3287(a). Examination of this court's use of the terms "wrongfully denied" and "wrongfully withheld" in *Tripp* v. *Swoap, supra,* 17 Cal.3d 671, demonstrates that they were not given any special meaning, intended to be an additional nonstatutory requirement for recovery of interest under section 3287(a), or intended to describe only the situation in which benefits were denied after exhaustion of administrative appeal. For example, explaining why the trial court had authority to direct retroactive payment of the ATD welfare benefits, this court said: "[H]aving determined that plaintiff had been *wrongfully denied* ATD benefits as a matter of law, the trial court merely rendered a judgment ordering defendant to discharge his legal obligation. Inasmuch as an ATD applicant is entitled by statute to benefits as of a particular date once eligibility is established ([Welf. & Inst. Code,] § 11056), there was no issue remaining on which the trial court could invade the director's discretion." (*Tripp* v. *Swoap, supra,* 17 Cal.3d 671, 677, italics added.) Thus, the benefits were "wrongfully denied" because the agency, without legal justification, had not paid them when due. A denial is no less wrongful, and no less a denial, when it is corrected by administrative appeal rather than judicial review.

The majority asserts that "*Tripp* emphasized that the recovery of prejudgment interest under section 3287(a) required *an action for damages*, which

included wrongfully denied benefits." (Maj. opn., *ante*, at p. 1031, italics added.) The majority cites footnote 12 of this court's opinion in *Tripp*, but that footnote says only that the operation of section 3287(a) is "predicated on the *existence* of damages" and that "wrongfully withheld welfare benefits" are damages for purposes of section 3287(a). (*Tripp* v. *Swoap, supra,* 17 Cal.3d 671, 682, fn. 12, italics added.) In response to the argument that granting section 3287(a) interest after judicial review would discriminate against those who obtain benefits by administrative appeal, this court, in another footnote, expressly declined to address that issue, stating: "We are not presented with the question whether the latter class of recipients is similarly entitled to interest and do not now decide that question which in our view defendant lacks standing to raise." (*Tripp* v. *Swoap, supra,* at p. 685, fn. 14.)

The meaning of "wrongfully denied" is perhaps best understood by examining this court's discussion of the policy basis for awarding interest on retroactive benefits: "The same public policy that favors the award of retroactive benefits would appear to favor the award of prejudgment interest on such benefits. Indeed, we have recognized in the context of an interest award on retroactive salary payments that '[i]f plaintiff had not been wrongfully suspended, he would have obtained the benefit of the moneys paid as of those dates; he has thus lost the natural growth and productivity of the withheld salary in the form of interest.' (*Mass* v. *Board of Education* [(1964)] 61 Cal.2d [612,] 625 [39 Cal.Rptr. 739, 394 P.2d 579].) The policy rationale behind awarding prejudgment interest articulated in *Mass* takes on particular significance in the context of wrongfully withheld welfare benefits. In some instances, it may take long periods of time for an applicant to vindicate his [or her] entitlement to aid and in the interval the delay inevitably exacts its toll from that portion of our society least able to bear the deprivation." (*Tripp* v. *Swoap, supra,* 17 Cal.3d 671, 683.)

This policy rationale applies fully to unemployment compensation that is awarded retroactively on administrative appeal. During the period of the delay occasioned by the erroneous initial determination of noneligibility, the unemployment compensation claimant is denied the use of the funds at a time of particular economic hardship. The toll exacted by delay in payment is no easier to bear when the delay is attributable to administrative rather than judicial proceedings.

To escape the force of this logic, the majority, without benefit of supporting data, characterizes as "inconsequential" (maj. opn., *ante*, at p. 1039) the

delay in payment occasioned by an erroneous initial determination of non-eligibility that is corrected by administrative appeal. This dismissive characterization cannot be squared with the United States Supreme Court's decision in *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347].

At issue in *Java* was the validity of a California statute (former Unemployment Insurance Code section 1335) under which the EDD automatically suspended payment of unemployment compensation whenever the claimant's most recent employer filed an administrative appeal from an initial determination of eligibility. (*California Human Resources Dept.* v. *Java, supra,* 402 U.S. 121, 128 [28 L.Ed.2d 666, 671-672].) Noting that the processing of the appeal took "between six and seven weeks" (*ibid.*), the court concluded that suspension of payments for this period of time frustrated one of the basic purposes of the Social Security Act (42 U.S.C. §§ 501-503), which was "to provide a substitute for wages lost during a period of unemployment not the fault of the employee" (*California Human Resources Dept.* v. *Java, supra,* 402 U.S. 121, 130 [28 L.Ed.2d 666, 673]), and to make this substitute available "at the earliest stage of unemployment that such payments were administratively feasible after giving both the worker and the employer an opportunity to be heard" (*id.* at p. 131 [28 L.Ed.2d at p. 674]). Observing that "delaying compensation until months have elapsed defeats these purposes," the court concluded that "the California procedure, which suspends payments for a median period of seven weeks pending [administrative] appeal, after an initial determination of eligibility has been made, is not 'reasonably calculated to insure full payment of unemployment compensation when due.'" (*Id.* at p. 133 [28 L.Ed.2d at p. 675], fn. omitted.) The court enjoined enforcement of the California statute. (*Id.* at p. 135 [28 L.Ed.2d at pp. 675-676].)

There is no evidence in the record before this court that the time required to process an administrative appeal has diminished in the years since the United States Supreme Court's decision in *California Human Resources Dept.* v. *Java, supra,* 402 U.S. 121. Indeed, the delay at issue in this very case was 10 weeks. (Maj. opn., *ante,* at p. 1028.) I fail to see how this court can characterize a delay of seven weeks (the median time required to process an administrative appeal) or ten weeks (the delay at issue in this case), during which an unemployed worker is deprived of the wages substitute for which he or she has demonstrated eligibility, as "inconsequential." In light of *Java,* the majority is simply wrong when it asserts that until the Board has acted, "no wrongful withholding of benefits or delay attributable to the administrative process occurs." (Maj. opn., *ante,* at p. 1037.)

The majority appears to hint that allowing an administrative agency to award interest under section 3287(a) would somehow violate the constitutional doctrine of separation of powers. Yet, as the majority itself acknowledges (maj. opn., *ante*, at p. 1034), the Legislature has authorized administrative agencies to award interest in other contexts, and such administrative interest awards have never been found invalid as violating the doctrine of separation of powers. Because their determinations are subject to judicial review on administrative mandamus using the independent judgment standard of review, the EDD and the Board may adjudicate unemployment compensation claims without violating the doctrine of separation of powers.[2] (See *Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 108 [172 Cal.Rptr. 194, 624 P.2d 244]; *Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 775-781 [163 Cal.Rptr. 619, 608 P.2d 707]; *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 343-346 [156 Cal.Rptr. 1, 595 P.2d 579].) Because an administrative interest award under section 3287(a) would be subject to the same judicial review, I fail to see how such an administrative interest award could be deemed an improper delegation or improper exercise of judicial authority.

In support of its holding, the majority also relies on this court's decisions in *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40 [276 Cal.Rptr. 114, 801 P.2d 357] and *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323], holding that the Fair Employment and Housing Commission (FEHC) lacks implied authority to award compensatory and punitive damages for employment discrimination. But those decisions are distinguishable.

In *Peralta,* this court noted that in the Fair Employment and Housing Act (FEHA) the Legislature had established "alternative systems of redress for employment discrimination" (*Peralta Community College Dist.* v. *Fair Employment & Housing Com., supra,* 52 Cal.3d 40, 55), with the administrative system to handle "claims that are amenable to conciliation or to corrective

---

[2]The majority cites this court's decision in *Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831 [123 P.2d 457] for the proposition that if the Board denies eligibility and the claimant seeks judicial review by administrative mandamus, the claimant is entitled to a "limited trial de novo" in which "the trial court exercises its independent judgment *on all the facts material to the claim, regardless of the record of proceedings before the Board.*" (Maj. opn., *ante,* at p. 1026, italics added.) In fact, a court applying the independent judgment standard may consider evidence outside the administrative record only when the evidence was improperly excluded or the evidence could not have been produced with reasonable diligence at the time of the administrative hearing. (Code Civ. Proc., § 1094.5, subd. (e); 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 291, p. 915.)

equitable remedies" and the judicial system to handle "those statutory claims that seek significant nonquantifiable monetary recompense or that the complainant wishes to join with nonstatutory causes of action" (*ibid.*). To effectuate this implied legislative partition of authority, this court determined that the FEHC did not have implied authority to award compensatory damages for emotional distress caused by employment discrimination. (*Id.* at p. 56.) This court stressed that it was unlikely the Legislature had intended a "grant by implication of unbridled power to an administrative agency to make monetary awards without guidelines or limitations." (*Id.* at p. 60.)

The statutory scheme for unemployment compensation, unlike the FEHA, does not establish alternative administrative and judicial systems for obtaining redress. Administration of unemployment compensation is vested exclusively in the EDD and the Board, subject to judicial review; therefore, resort to the administrative process is the only means by which those who lose their jobs through no fault of their own may obtain unemployment compensation. Moreover, interest, unlike emotional distress, is quantifiable and readily calculated without additional determinations of fact. Once the administrative law judge or the Board has decided that the previous determination of noneligibility was erroneous and has made the factual determinations necessary to award retroactive benefits—that is, the amount of compensation due and the date of vesting—calculating interest under section 3287(a) is a purely mathematical process, requiring no additional factual findings and no exercise of discretion. Because determining and awarding interest under section 3287(a) is not an exercise of "unbridled power . . . without guidelines or limitations" (*Peralta Community College Dist.* v. *Fair Employment & Housing Com., supra,* 52 Cal.3d at p. 60), there is no reason to believe that the Legislature intended to withhold from the Board the authority to perform this simple mathematical calculation.

*Dyna-Med,* in which this court held that the FEHC lacks implied authority under the FEHA to award punitive damages for job discrimination, is distinguishable for essentially the same reasons. Our decision was grounded on the availability of an alternative method of obtaining punitive damages for employment discrimination "by filing an independent civil action alleging tort causes of action either with or without an FEHA count" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d 1379, 1403) and on "the extraordinary nature of punitive damages" (*id.* at p. 1389). Interest is not "extraordinary," and an unemployment compensation claimant has no independent judicial remedy.

Although the Legislature has not expressly authorized the Board to award section 3287(a) interest on retroactive unemployment compensation, the

Board has implied authority to do so. "It is well settled in this state that governmental officials may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers." (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810 [151 P.2d 505, 157 A.L.R. 324], original italics; accord, *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 824 [258 Cal.Rptr. 161, 771 P.2d 1247].) As this court explained in *Tripp* v. *Swoap*, *supra*, 17 Cal.3d 671, 683, the power to award section 3287(a) interest is the equitable and logical complement of the power to award retroactive benefits, a power that the Board unquestionably possesses and routinely exercises.

When employees lose their jobs through no fault of their own, every day of delay in obtaining the unemployment compensation to which they are legally entitled, and which may be their only source of income until they obtain new employment, is significant. I would not characterize delays of seven or ten weeks in the payment of unemployment compensation as "inconsequential," and I would recognize the Board's implied authority to add interest to unemployment compensation retroactively awarded after correction of administrative error. Accordingly, I would affirm the judgment of the Court of Appeal.

Werdegar, J., concurred.

Respondent's petition for a rehearing was denied November 13, 1996. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.