RUMSEY INDIAN RANCHERIA
OF WINTUN INDIANS, et
al., Plaintiffs,

v.

Governor Pete WILSON and State
of California, Defendants.

and Consolidated Cases

No. Civ. S–92–812 GEB.

United States District Court,
E.D. California.

Sept. 16, 1998.

Howard L. Dickstein, Dickstein and Merin, Sacramento, CA, George Forman, Forman and Prochaska, San Rafael, CA, for Rumsey Indian Rancheria of Wintun

**1228**

Indians, Table Mountain Rancheria, Cher-AE Heights Indian Community of Trinidad Rancheria.

Jerome L. Levine Levine and Associates, Los Angeles, CA, George Forman, Forman and Prochaska, San Rafeal, CA, for San Manual Band of Mission Indians.

Glenn M. Feldman, pro hac vice, O'Connor Cavanagh Anderson Westover Killingsworth and Beshea, Phoenix, AZ, George Forman, Forman and Prochaska, San Rafeal, CA, for Cabazon Band of Mission Indians.

John Winkelman, Law Offices of John Winkelman, Alpine, CA, George Forman, Forman and Prochaska, San Rafeal, CA, for Viejas Reservation of Capitan Grande Band of Diegueno Mission Indians.

Lester J. Marston, Rapport and Marston, Ukiah, CA, George Forman, Forman and Prochaska, San Rafeal, CA, for Hopland Band of Pomo Indians.

Barbara Ellen Karshmer, Alexander and Karshmer, Berkeley, CA, George Forman, Forman and Prochaska, San Rafeal, CA, for Sycuan Band of Mission Indians, Morongo Band of Mission Indians, Santa Rosa Band of Tachi, Cachill Dehe Band of Wintun Indians of Colusa Indian Community, Soboba Band of Cahuilla Mission Indians, Robinson Band of Pomo Indians.

Art Bunce, Law Offices of Art Bunce, Escondido, CA, for Agua Caliente Band of Cahuilla Indians, Barona Group of Capitan Grande Band of Mission Indians.

Matthew J. Geyer, Landels Ripley and Diamond LLP, San Francisco, CA, for GTech Corp.

Order [1]

BURRELL, District Judge.

Pending are the parties' motions deemed to be responsive to the Court's Order filed June 4, 1998, which directed the parties to file cross-motions for summary judgment to resolve the "limited question" on remand from the Ninth Circuit: "[W]hether California permits the operation of slot machines in the form of the state lottery or otherwise." *Rumsey Indian Rancheria of Wintun Ind. v. Wilson,* 64 F.3d 1250, 1260 (9th Cir.1994), *cert. denied sub nom. Sycuan Band of Mission Indians v. Wilson,* —— U.S. ——, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997).[2] For the following reasons, Defendants' motion is granted, and Plaintiffs' motion is denied.

## I.

## ANALYSIS

Defendants State of California and Governor Wilson argue they are entitled to summary judgment on the remand question because California law does not permit the operation of slot machines by anyone, including the California State Lottery ("CSL"). *See* Cal.Penal Code §§ 330a, 330b. Plaintiffs Tribes disagree, arguing that the CSL is exempt from the general statutory prohibition on slot machines.[3]

---

1. The parties' cross-motions were determined to be suitable for decision without oral argument. L.R. 78–230(h).

2. The Tribes divided into two groups and filed separate briefs on the remand question. Citations to briefs filed by the law firm of Levine & Associates will be labeled "Levine," while papers filed by the law firm of Forman & Prochaska will be labeled "Forman."

3. Although the parties were specifically directed to file "cross-motions for summary judgment" in the Order filed June 4, 1998, the Tribes refused to characterize the papers they filed as motions for summary judgment,

choosing instead to label them "Opening Briefs" on the remand question. As authority for these filings, they point to an exchange between the Court and one of the attorneys for the Tribes during the hearing on June 1, 1998. After counsel requested that the briefs to be filed not be characterized as motions for summary judgment, the Court replied, "I think you're correct. You would be filing briefs on the remand issue—briefs on the Ninth Circuit's remand issue...." *See* June 1, 1998, RT at 38. However, this exchange did not constitute a final ruling that entitled the Tribes to ignore the written ruling filed on June 4, 1998, regarding the issues presented at the June 1 hearing. The June 4 Order

Alternatively, the Tribes contend that even if the CSL is not found to be exempt from this statutory prohibition, Defendants' motion should be denied or continued under Fed.R.Civ.P. 56(f) to afford the Tribes an opportunity to discover whether the gaming devices the CSL is actually using fit within the definition of "slot machines" in Cal.Penal Code § 330b(2). Defendants oppose the Rule 56(f) motion, asserting that discovery is unnecessary to determine the answer to the remand question.

### A.

### *THE TRIBES' RULE 56(F) MOTION*

■ When a request for a continuance is made pursuant to Rule 56(f), the court cannot rule on the motion for summary judgment until it determines the merits of the request for a continuance. *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518–19 (9th Cir.1987). Under Rule 56(f), a court has discretion to deny a summary judgment motion or grant a continuance "if the opposing party needs to discover essential facts." *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir.1986). To prevail on a motion under Rule 56(f), the moving party "must make clear what information is sought and how it would preclude summary judgment." *Garrett*, 818 F.2d at 1518; *Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades District Council, Metal Trades Dept., AFL—CIO*, 817 F.2d 1391, 1395 (9th Cir.1987); *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir.1994).

At the core of the Tribes' Rule 56(f) motion is an ongoing dispute between the parties as to the scope of the Ninth Circuit's remand question. Defendants argue that the remand question is a question of law, for which the answer can be derived solely from analysis of relevant California

construed the remand question as one of law and ruled that it was the only question that need be answered to resolve the case. Therefore, the Tribes' position that further proceedings are required after the Ninth Circuit's remand question is addressed, *see* Levine Opp'n Defs.' Mot. Summ. J. at 2, is without

statutes. The Tribes counter that the remand question is a mixed question of law and fact, which requires examination of both California statutes and whether the CSL is actually operating games fitting the definition of "slot machines" in Cal.Penal Code § 330b(2). Thus, the Tribes assert that evidence of the characteristics of the specific gaming devices the CSL is using would preclude summary judgment for Defendants because this information is relevant to determining what games California "permits."

The short answer to the Tribes' argument is that the June 4 Order already decided the remand question was one of law and that no further discovery was necessary.

"California law prohibits the operation of slot machines as a misdemeanor offense." *Rumsey*, 64 F.3d at 1256 (citing Cal.Penal Code §§ 330a, 330b). Therefore, the relevant inquiry on remand is whether California law provides the CSL with an exemption from this general prohibition. This is a question of law. If the answer to that question is no, it is not necessary to proceed further to determine whether, despite the illegality of operating slot machines, the CSL is operating devices fitting the description of slot machines. As the State has repeatedly emphasized, a finding that the CSL is operating slot machines illegally would only result in the State's elimination of such activity. It would not result in a determination that slot machines are "permitted" under California law, and thus, the proper subject of negotiation under IGRA. Since Plaintiffs have not shown that the discovery they seek is relevant to the remand question, further discovery will not be allowed.

merit. The Ninth Circuit remanded the action for the limited purpose of answering the question it posed. Since the Tribes' briefs address that question of law, and were required by the June 4 Order to be a summary judgment motion, they will be treated as a motion for summary judgment.

Order filed June 4, 1998, at 2–3 (footnote omitted).

Although the Tribes inexplicably ignored the June 4 Order, their Rule 56(f) motion essentially challenges the legal correctness of that Order. Therefore, the Court will consider the Tribes' argument as a request for reconsideration.

The Tribes argue that discovery related to the gaming devices the CSL is actually using is relevant to the question of whether California "permits" the CSL to operate slot machines. The Ninth Circuit defined "permit" as "[t]o suffer, allow, consent, let; to give leave or license; to acquiesce by failure to prevent, or to expressly assent or agree to the doing of an act." *Rumsey*, 64 F.3d at 1257. Therefore, the Tribes contend that even if the CSL was subject to the general prohibition against slot machines, their proposed games would still be a proper subject of negotiation under IGRA if the State was allowing, consenting, letting, or acquiescing by failing to prevent the CSL's operation of games fitting the description of slot machines. *See* Levine Opp'n at 5.

However, as noted in the June 4 Order, a ruling that CSL is operating slot machines notwithstanding their illegality would not result in a finding that they are "permitted" under California law. Rather, it would merely result in the elimination of these activities. In California,

it is well settled that administrative agencies have only the powers conferred on them, either expressly or by implication, by Constitution or statute. An administrative agency must act within the powers conferred upon it by law and may not act in excess of those powers. Actions exceeding those powers are void. . . .

*American Fed'n of Labor v. Unemployment Ins. Appeals Bd.*, 13 Cal.4th 1017, 1042, 56 Cal.Rptr.2d 109, 920 P.2d 1314 (1996) (citations omitted). Therefore, absent statutory authority to operate slot machines, the CSL would necessarily be bound to stop gaming activities found to be slot machines. *See Western Telcon v. California State Lottery*, 13 Cal.4th 475, 495, 53 Cal.Rptr.2d 812, 917 P.2d 651 (1996) (prohibiting the CSL from conducting an electronic keno game because it was beyond its statutory authority); Senate Rules Comm. Analysis of A.B. 197,[4] attached as Exh. 2 to Decl. of F. Lawrence in Opp'n Defs.' Mot. Summ. J. (noting that after the Deputy Attorney General opined in July 1996 that the CSL's "Instant Ticket Vending Machines" were "slot machines" within the meaning of Cal.Penal Code 330b(2), the CSL removed the machines from operation).

■ In sum, regardless of the gaming devices the CSL is actually using, "IGRA does not require the state to negotiate with respect to forms of gaming it does not presently permit." *See Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273, 278 (8th Cir.1993). Therefore, discovery is unnecessary to resolve the remand question, and the Tribes' Rule 56(f) motion is denied.

*B.*

### CROSS–MOTIONS FOR SUMMARY JUDGMENT

The parties take opposite positions on the question of whether the CSL is permitted under California law to operate slot machines.[5] The State argues that Cal.Penal Code §§ 330a and 330b proscribe slot machines, and no statute exempts the CSL from this prohibition. The Tribes contend that the California Lottery Act of 1984 ("Lottery Act") both expressly authorizes the CSL to conduct games fitting the defi-

---

**4.** Assembly Bill 197 was eventually enacted and codified in Cal. Gov't Code § 8880.335.

**5.** Although the remand question from the Ninth Circuit is whether slot machines are permitted in the form of the state lottery "or otherwise," the Tribes have not argued that anyone besides the CSL is permitted to use slot machines.

nition of slot machines and expressly exempts the CSL from the general prohibition on slot machines.

There is no question that California generally prohibits "every person" from operating slot machines as a misdemeanor offense. *See* Cal.Penal Code §§ 330a, 330b(3); *Rumsey*, 64 F.3d at 1256. A "slot machine" is defined as

> Any machine, apparatus or device ... that, as a result of the insertion of any piece of money or coin or other object, or by any other means, such machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value or additional chance or right to use such slot machine or device, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.

Cal.Penal Code § 330b(2).[6] The dispute between the parties centers on whether the CSL is authorized by the Lottery Act to operate games that fit within this definition.

The CSL was created by and derives its authority from the Lottery Act, which was enacted by the voters' passage of Proposition 37 in 1984. When interpreting the provisions of a statute enacted by voter initiative, "the intent of the voters is the paramount consideration. To determine intent, we look first to the provision's language, giving the words their ordinary meaning." *Davis v. City of Berkeley*, 51 Cal.3d 227, 234, 272 Cal.Rptr. 139, 794 P.2d 897 (1990). In addition, "the words of the statute must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." *Lungren v. Deukmejian*, 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299 (1988).

The Tribes assert that the broad grant of authority to the Lottery Commission to develop gaming devices includes authority to operate slot machines proscribed by the Penal Code. The Lottery Act authorizes the CSL to conduct "lottery games," Cal. Gov't Code § 8880.28(a), which the Act defines as "any procedure authorized by the Commission whereby prizes are distributed among persons who have paid, or unconditionally agreed to pay, for tickets or shares which provide the opportunity to win such prizes."[7] Cal. Gov't Code § 8880.12. The elements of a lottery game have been summarized by the California Supreme Court as "(1) a prize; (2) distributed by chance; and (3) consideration." *Western Telcon*, 13 Cal.4th 475, 484 & n. 3, 53 Cal.Rptr.2d 812, 917 P.2d 651 (1996); Cal. Gov't Code § 8880.12. The Tribes contend that these elements are almost identical to the elements of a slot machine in Cal.Penal Code § 330b(2), which a California Attorney General's opinion delineated as: "(1) operation by money, coin or ob-

---

**6.** Separate definitions of "slot machines" may be found in Cal.Penal Code §§ 330a & 330.1. However, no party has argued that any differences in those definitions are material to this litigation.

**7.** The California Supreme Court has deemed this definition to be "materially indistinguishable" from that contained in Cal.Penal Code § 319, which defines a "lottery" as

> any scheme for the disposal or distribution of property by chance, among persons who

have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known.

*See Western Telcon*, 13 Cal.4th at 484, 53 Cal.Rptr.2d 812, 917 P.2d 651.

ject; (2) the element of chance; and (3) something of value offered." 67 Ops.Cal. Atty.Gen. 528 (1984) (citing 66 Ops.Cal. Atty.Gen. 276, 279 (1983)). In addition, the Tribes point out that the Lottery Act explicitly contemplates that electronic devices would be used in the CSL's operations. *See, e.g.,* Cal. Gov't Code § 8880.28(a)(3) ("In games utilizing computer terminals or other devices, no coins or currency shall be dispensed to players from these computer terminals or devices."); Cal. Gov't Code § 8880.30(c) ("It is the intent of this chapter that the commission may use any of a variety of existing or future methods or technologies in determining winners."); *see also Western Telcon,* 13 Cal.4th at 494, 53 Cal.Rptr.2d 812, 917 P.2d 651 (agreeing that the CSL is authorized to conduct "on-line games"). Thus, the Tribes contend that by aggregating the elements of a lottery game and the CSL's authority to use electronic devices, it can be discerned that the CSL is allowed to operate devices fitting the description of slot machines.

This argument is strikingly similar to another argument advanced by the Tribes in this litigation that was explicitly rejected by the Ninth Circuit. In this Court and in the Ninth Circuit, the Tribes argued the State was required under IGRA to negotiate with them regarding banked and percentage card games notwithstanding the general prohibition on those games in Cal.Penal Code § 330. Relying on the analysis in *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), the Tribes asserted that these games were "permitted" because they were merely "regulated" and, therefore, did not violate the State's public policy. They supported their contention with evidence that California allowed (1) banked and percentage games other than card games and (2) nonbanked, nonpercentage card games. Adding the characteristics of those two permitted types of games together, the Tribes contended that California permitted banked and percentage card games. However, the Ninth Circuit disagreed, holding the *Cabazon* analysis inapplicable to Class III gaming activities, and stating that "[t]he fact that California allows games that share some characteristics with banked and percentage card gaming ... is not evidence that the State permits the [Tribes' proposed games]." *Rumsey,* 64 F.3d at 1258.

By the same token, it is inappropriate here to read the Lottery Act to permit slot machines merely because the elements of a lottery game coupled with the use of electronic equipment could be viewed as allowing devices that are functionally similar to slot machines. As stated in *Rumsey,* it is not significant "that the state lottery, if not technically a slot machine, is functionally similar to one." *Rumsey,* 64 F.3d at 1258.

■ "California law, historically and currently, distinguishes between the operation of lotteries ... and other forms of illegal gaming." *Western Telcon,* 13 Cal.4th at 484, 53 Cal.Rptr.2d 812, 917 P.2d 651; *see People v. Postma,* 160 P.2d 221, 69 Cal.App.2d Supp. 814, 819 (1945) ("Gaming, betting, and lotteries are separate and distinct things in law and fact, and have been recognized consistently as calling for different treatment and varying penalties. The distinctions are well developed, clearly marked, and in most instances rigidly maintained."). Since the original 1872 California Penal Code, the definitions and prohibitions on lotteries were contained in part 1, title 9, chapter 9 of the Penal Code ("chapter 9"), commencing with Cal.Penal Code § 319, while the definitions and prohibitions on other forms of gaming, including slot machines, were contained in part 1, title 9, chapter 10 ("chapter 10"), commencing with Cal.Penal Code § 330. *Western Telcon,* 13 Cal.4th at 481–82, 53 Cal.Rptr.2d 812, 917 P.2d 651. When the Lottery Act was passed in 1984, it authorized the CSL to play only "lottery games." Cal. Gov't Code § 8880.28(a). In light of California's long history of recognizing a "conceptual division" between the prohibitions on lotteries and the prohibi-

tions on gaming, *see Western Telcon,* 13 Cal.4th at 484, 53 Cal.Rptr.2d 812, 917 P.2d 651, it is inappropriate to infer that by authorizing the CSL to conduct "lottery games," the voters also authorized other forms of gaming activities.[8]

Indeed, the only express exemptions from the application of penal statutes in the Lottery Act are contained in Cal. Gov't Code § 8880.6, which states that "[s]ections 320, 321, 322, 323, 324, 325, 326, and 328 of the Penal Code do not apply to the [CSL] or its operations." The enumerated exemptions in § 8880.6 encompass all of the pertinent chapter 9 prohibitions on lottery activities.[9] Notably absent from this list is any reference to the slot machine prohibition in §§ 330a and 330b or any other gaming activity in chapter 10. "Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, [a court] may not imply additional exemptions unless there is a clear legislative intent to the contrary." *Sierra Club v. State Bd. of Forestry,* 7 Cal.4th 1215, 1230, 32 Cal.Rptr.2d 19, 876 P.2d 505 (1994).

■ The Tribes argue that additional exemptions from the penal code are provided to the CSL in Cal. Gov't Code § 8880.2 (entitled "Activities not affected") which states:

> *Except for the state-operated lottery established by this Chapter, nothing in this Chapter shall be construed to repeal or modify existing State law with respect to* the prohibition of casino gambling, punch boards, *slot machines,* dog racing, video poker or blackjack machines paying prizes, or any other forms of gambling.

(emphasis added). The Tribes contend that this provision means that "as to the state-operated lottery, the Lottery Act repeals or modifies existing state law with respect to gambling, though not as to any other person or entity." *See* Levine Open. Br. at 22; Forman Open. Br. at 7–8. The State offers a competing interpretation: "that the electorate intended to clarify that the only change to then-existing prohibitions on virtually all gambling in California would be to allow the lottery game to be operated by the [CSL]." *See* Defs.' Reply at 5.

There are several factors that militate against the Tribes' interpretation of this provision. First, and foremost, the literal language of the provision does not affirmatively repeal or modify any existing law. Interpreted literally, the exception clause only raises the possibility that the state-operated lottery could be "construed" to repeal or modify existing laws relating to the enumerated gaming activities. Neither this provision nor any other provision of the Act compels such a construction. Second, in interpreting the meaning of § 8880.2, the Court must determine whether the Tribes' construction "is consistent with other provisions of the statute." *See Lungren,* 45 Cal.3d at 735, 248 Cal.Rptr. 115, 755 P.2d 299. The Tribes' construction of § 8880.2 contravenes the California Supreme Court's interpretation of what the voters intended when passing Proposition 37. The California Supreme Court has specifically held that the voters only authorized the CSL to conduct lottery games, *see* Cal. Gov't Code § 8880.28(a), and that the Lottery Act cannot be interpreted "as authority for CSL to conduct other forms of gambling." *Western Tel-*

8. Although the California Supreme Court expressly declined to reach the question of whether the CSL is authorized to operate slot machines or any other chapter 10 gaming activities in *Western Telcon,* it recognized "that the voters in Proposition 37, did not establish a state gambling house, but a state lottery;" that the Lottery Act authorized the CSL to operate only lottery games; and, therefore, that the Lottery Act could not be interpreted "as authority for CSL to conduct

other forms of gambling." *Western Telcon,* 13 Cal.4th at 493, 53 Cal.Rptr.2d 812, 917 P.2d 651.

9. The only relevant provision of chapter 9 from which the CSL was not exempted was Cal.Penal Code § 319, which merely provides a definition for a "lottery," and does not itself prohibit any activity.

con, 13 Cal.4th at 493, 53 Cal.Rptr.2d 812, 917 P.2d 651. Third, the Tribes' interpretation suffers from the fact that the drafters of the Lottery Act showed quite clearly in Cal. Gov't Code § 8880.6 that they knew how to exempt the CSL from provisions of the penal code when that was the intended effect. Finally, § 8880.28(a)(1) states that "[n]o lottery game may use the theme of ... blackjack ... draw poker, slot machines, or dog racing." If the CSL is prohibited from using these themes, § 8880.2 cannot reasonably be construed to "repeal or modify" existing prohibitions of activities embodying such themes. Therefore, § 8880.2 does not exempt the CSL from the general slot machine prohibition.

In addition, it appears from the record that the State has acted in accordance with its assertion that the CSL remains subject to the general prohibition against slot machines. In July 1996, Deputy Attorney General Manuel Medeiros issued an opinion to the CSL stating that the CSL's Instant Ticket Vending Machines ("ITVM"), which dispensed tickets for a game called "Scratcher," were slot machines. See Letter to Maryanne G. Gillard from Manuel Medeiros, dated July 3, 1996, attached as Exh. 1 to Decl. of G. Forman. In response, the CSL removed the Scratcher machines from use. See Senate Rules Comm. Analysis of A.B. 197, attached as Exh. 2 to Decl. of F. Lawrence in Opp'n Defs.' Mot. The California Legislature then enacted Cal. Gov't Code § 8880.335, which allowed the CSL to "authorize the use of an electronic or electromechanical device [which met certain specifications] to dispense lottery tickets."

The Tribes argue that the enactment of § 8880.335 supports their view that California permits slot machines because it authorizes the use of a device the Attorney General previously opined was a slot machine. However, even if this provision did authorize the use of a device fitting the § 330b(2) definition of slot machine, it only authorized a machine that dispenses lottery tickets. See 1997 Cal. Stats., c. 226 (A.B.197) § 3 ("[T]he sole purpose of [§ 8880.335] is to enable the lottery commission to employ electronic and electromechanical devices in the sale of lottery tickets while ensuring that the devices themselves do not become an object of play.").[10]

█ Nothing in § 8880.335 supports the Tribes' contention that this statute permits slot machines.[11] Regarding what the state "permits," the Ninth Circuit in *Rumsey* instructs that it agrees "with the approach

---

**10.** Although the Legislature's statement of the purpose of the Lottery Act is not determinative of the voters' intent, the Legislature indicated in the legislative history of § 8880.335 its belief that the anti-gaming penal statutes in chapter 10 remain applicable to the CSL. That history explained that § 8880.335 was not intended to restrict the CSL from using electronic devices in addition to ITVM's "that are in conformity with the [Lottery Act] *and not prohibited by Chapter 10 (commencing with Section 330) of Title 9 of Part 1 of the Penal Code." See* 1997 Cal. Stats., c. 226 (A.B. 197) § 2 (emphasis added).

**11.** Similarly, the materials submitted in a request for judicial notice filed by Plaintiff Tribes the Sycuan Band of Mission Indians, Morongo Band of Mission Indians, Santa Rosa Band of Tachi Indians, Cachil Dehe Band of Wintun Indians of Colusa Indian Community, Soboba Band of Cahuilla Mission Indians, and Robinson Band of Pomo Indians, (collectively "Requesting Tribes") do not support the Requesting Tribes' "contention that the State of California permits operation of slot machines, in the form of the State Lottery or otherwise." *See* Request for Judicial Notice filed Sept. 3, 1998, at 2–3. The Requesting Tribes seek judicial notice of California Senate Bill No. 287 ("SB 287"), which ratified Tribal–State gaming compacts ("compacts"), and portions of these compacts. However, other Plaintiff Tribes, Rumsey Indian Rancheria of Wintun Indians, Table Mountain Rancheria, and Cher–Ae Heights Indian Community of Trinidad Rancheria, who also entered into the compacts, (collectively "Objecting Tribes") object to the request, stating, *inter alia,* that the request "fails to provide complete or necessary information on any adjudicative fact and misleads the Court by appending only four pages of the 122 page tribal-state compacts and omitting the provisions which explicitly prohibit slot machines" and could greatly

taken by the Eighth Circuit" in *Cheyenne River.* 64 F.3d at 1258. In *Cheyenne River,* the plaintiff tribe sought to operate traditional keno, when state law only permitted video keno. The tribe argued that "because the state permits a form of keno (video keno) to be played, the tribe should be allowed to host traditional keno." 3 F.3d at 278. The Eighth Circuit rejected the tribe's argument, stating that

> [t]he "such gaming" language of 25 U.S.C. § 2710(d)(1)(B) does not require the state to negotiate with respect to forms of gaming it does not presently permit. Because video keno and traditional keno are not the same and video keno is the only form of keno allowed under state law, it would be illegal … for the tribe to offer traditional keno to its patrons.

*Id.* at 279. Thus, even though the state in *Cheyenne River* allowed one form of keno to be played in the state, it was not required to allow the tribes to conduct other forms of keno.

Similarly, the Tribes in this case are not allowed to operate the gaming devices they seek merely because the State Legislature gave specific authority for the CSL to use ITVM's. The Ninth Circuit made plain in *Rumsey* that "IGRA does not require a state to negotiate over one form of Class III gaming activity simply because it legalized another, albeit similar form of gaming." *Rumsey,* 64 F.3d at 1258. Here, the State has no objection to negotiating with the Tribes with respect to ITVM's or any other game the CSL is using. *See* Defs.' Reply at 6; Defs.' Req. Recons. Mag. Ruling, filed April 14, 1998, at 13. "[A] state need only allow Indian tribes to operate games that others can operate, but need not give tribes what others cannot have." *Rumsey,* 64 F.3d at 1258. Since the State is willing to negotiate with the Tribes with respect to games the CSL is presently operating, it has satisfied the requirements of IGRA.

## II.

## CONCLUSION

For the foregoing reasons, the Ninth Circuit's remand question is answered in the negative: California does not permit the operation of slot machines in the form of the state lottery or otherwise. Accordingly, Defendants' motion is granted and the Tribes' motion is denied. The Clerk is directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.

---

prejudice the Objecting Tribes. *See* Objecting Tribes' Objection to Request for Judicial Notice at 1–2. The State objects to the request on similar grounds, also arguing that the request is for judicial notice of only selected, transition provisions of compacts "whose sole purpose is to provide a mechanism for transition from illegal slot machines to lawful gaming activities." *See* State's Objection to Request for Judicial Notice at 2.

The Court declines to judicially notice these materials. Neither SB 287 nor the compacts indicate that California permits the operation of slot machines. Indeed, the provisions themselves, as supplied by the Requesting Tribes, make clear that slot machines are to be phased out and disallowed. Thus, even if SB 287 and the compacts were considered, they would not change the Court's analysis. *Cf. Apache Survival Coalition v. United States,* 21 F.3d 895, 913–14 n. 19 (9th Cir.1994) (declining to take judicial notice where submitted material, "even if [ ] considered, … would not change [the Court's] calculus").