[No. C061227. Third Dist. Apr. 30, 2012.]

DIAGEO-GUINNESS USA, INC., et al., Plaintiffs and Appellants, v. BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

McDermott Will & Emery, Elizabeth Mann, Jessica Thomas, Allan L. Schare and Marc Sorini for Plaintiffs and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Paul D. Gifford, Assistant Attorney General, William L. Carter, Steven J. Green and Robert E. Asperger, Deputy Attorneys General, for Defendant and Respondent.

OPINION

HULL, J.—Plaintiffs Diageo-Guinness USA, Inc. (Diageo-Guinness), and the Flavored Malt Beverage Coalition (Coalition) appeal from a judgment entered in favor of defendant Board of Equalization (Board) on plaintiffs' complaint for declaratory relief. Plaintiffs had sought a declaration that regulations adopted by the Board, which redefined "distilled spirits" to include flavored malt beverages (FMB's) for purposes of excise taxation are void. Plaintiffs contend the classification of alcoholic beverages is within the exclusive jurisdiction of the Department of Alcoholic Beverage Control (Department), and the Department has consistently classified FMB's as beer, which is subject to a much lower tax rate. We agree the Board exceeded its statutory powers and reverse.

FACTS AND PROCEEDINGS

Prior to 1955, the manufacture, distribution and sale of alcoholic beverages was regulated by the Board. In November 1954, article XX, section 22, of the state Constitution was amended, transferring such regulatory power to the Department. As later amended, it reads in relevant part:

"The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The [D]epartment shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverages license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. It shall be unlawful for any person other than a licensee of said [D]epartment to manufacture, import or sell alcoholic beverages in this State. [¶] . . . [¶]

"Until the Legislature shall otherwise provide, the privilege of keeping, buying, selling, serving, and otherwise disposing of alcoholic beverages in [various establishments], and the privilege of keeping, buying, selling, serving, and otherwise disposing of beers on any premises open to the general public shall be licensed and regulated under the applicable provisions of the Alcoholic Beverage Control Act, insofar as the same are not inconsistent with the provisions hereof, and excepting that the license fee to be charged [various establishments] for the privilege of keeping, buying, selling, or otherwise disposing of alcoholic beverages, shall be the amounts prescribed as of the operative date hereof, subject to the power of the Legislature to change such fees.

"The State Board of Equalization shall assess and collect such excise taxes as are or may be imposed by the Legislature on account of the manufacture, importation and sale of alcoholic beverages in this State."

To implement the foregoing, the Legislature enacted the Alcoholic Beverage Control Act (the ABC Act) (Bus. & Prof. Code, § 23000 et seq.). (*People v. Frangadakis* (1960) 184 Cal.App.2d 540, 551 [7 Cal.Rptr. 776].) Business and Professions Code section 23001 declares: "This division is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages. . . ."

Business and Professions Code section 23051 states: "On and after January 1, 1955, the [D]epartment shall succeed to all of the powers, duties, purposes, responsibilities, and jurisdiction now conferred on the [Board] under Section 22 of Article XX of the Constitution and this division, except the power to assess and collect such excise taxes as are or may be imposed by law on account of the manufacture, importation, and sale of alcoholic beverages in this State, which shall remain the exclusive power of the [Board]."

The ABC Act defines "alcoholic beverage" to include "alcohol, spirits, liquor, wine, beer, and every liquid or solid containing alcohol, spirits, wine, or beer, and which contains one-half of 1 percent or more of alcohol by volume and which is fit for beverage purposes either alone or when diluted, mixed, or combined with other substances." (Bus. & Prof. Code, § 23004.) "Beer" is defined as "any alcoholic beverage obtained by the fermentation of any infusion or decoction of barley, malt, hops, or any other similar product, or any combination thereof in water, and includes ale, porter, brown, stout, lager beer, small beer, and strong beer but does not include sake, known as Japanese rice wine." (Bus. & Prof. Code, § 23006.) "Distilled spirits" is

defined as "an alcoholic beverage obtained by the distillation of fermented agricultural products, and includes alcohol for beverage use, spirits of wine, whiskey, rum, brandy, and gin, including all dilutions and mixtures thereof." (Bus. & Prof. Code, § 23005.)

The Legislature also enacted the Alcoholic Beverage Tax Law (the Tax Law) (Rev. & Tax. Code, § 32001 et seq.). Under the Tax Law, "[t]he issuance of any manufacturer's, winegrower's, wine blender's, distilled spirits manufacturer's agent's, rectifier's, wholesaler's, importer's, customs broker's license, or wine direct shipper permit under [the ABC Act] shall constitute the registration of the person to whom the license or permit is issued as a taxpayer under [the Tax Law]. . . ." (Rev. & Tax. Code, § 32101.)

Beer is taxed at a rate of $0.04 per gallon plus a surcharge of $0.16 per gallon, for a total of $0.20 per gallon. (Rev. & Tax. Code, §§ 32151, subd. (a), 32220, subd. (a).) Distilled spirits are taxed at the considerably higher aggregate rates of either $3.30 or $6.60 per gallon, depending on alcohol content. (Rev. & Tax. Code, §§ 32201, 32220, subds. (e) & (f).)

An FMB is a hybrid containing characteristics of both beer and distilled spirits. As described by the Board, "FMBs are produced from a base of fermented malt beverage that is treated to remove the basic characteristics of a malt beverage, including color, bitterness, and taste. The base is then mixed with flavorings or other ingredients containing distilled alcohol." Plaintiffs describe FMB's somewhat differently: FMB's "begin with a base of brewed and fermented beer, to which a variety of ingredients are added. Those ingredients include one or more flavors, which ordinarily contain alcohol obtained by distillation, but which are 'unfit for beverage purposes' . . . ." Plaintiffs explain the fact that an ingredient is "unfit for beverage purposes" does not mean it is unfit for human consumption. Rather, the term "is derived from the Prohibition era when the Legislature wanted to exempt liquids containing alcohol, like kitchen flavors, that were not consumed like a typical alcohol beverage from the ban required by Prohibition."

FMB's have traditionally been classified by the Department as beer for purposes of licensing and regulation. Prior to the regulations at issue in this matter, the Board likewise taxed FMB's as beer.

In October 2006, the Board received a petition requesting that it begin taxing FMB's as distilled spirits, and the Board thereafter initiated formal rulemaking procedures. On April 8, 2008, the Board adopted regulations redefining "beer" and "distilled spirits" for purposes of taxation. Those regulations were approved by the Office of Administrative Law on June 10, 2008.

The new regulations are contained in title 18 of the California Code of Regulations as section 2558 et seq. (Hereafter these regulations shall be referred to as Regulation followed by the section number or collectively as the FMB Regulations.) Regulation 2558 reads: "Effective October 1, 2008, any alcoholic beverage, except wine . . . , which contains 0.5 percent or more alcohol by volume derived from flavors or other ingredients containing alcohol obtained from the distillation of fermented agricultural products, is a distilled spirit."

Regulation 2559 creates a rebuttable presumption that any alcoholic beverage other than wine is a distilled spirit within the meaning of Regulation 2558. Regulation 2559.1 provides the means by which an interested party may rebut the presumption. Subdivision (a) of Regulation 2559.1 reads: "On or after July 10, 2008, the presumption in Regulation 2559 may be rebutted by the manufacturer of the alcoholic beverage filing a report, under penalty of perjury, with the Board stating that the alcoholic beverage contains less than 0.5 percent alcohol by volume derived from flavors or other ingredients containing alcohol obtained from the distillation of fermented agricultural products and specifying the sources of the alcohol content of the alcoholic beverage, including the alcohol by volume derived from flavors or other ingredients containing alcohol obtained by distillation."

Regulation 2559.3 requires the Board to maintain a list of all alcoholic beverages "that have been found to have successfully rebutted the presumption set forth in Regulation 2559." (Regulation 2559.3, subd. (a).) Finally, Regulation 2559.5 reads: "Effective October 1, 2008, for purposes of tax reporting, a taxpayer will be deemed to have correctly classified an alcoholic beverage as not being a distilled spirit, as defined by Business and Professions Code section 23005, if at the time taxes are imposed, as set forth in the Revenue and Taxation Code, division 2, part 14, chapters 4, 5 and 5.5, the alcoholic beverage was included on the Board's list pursuant to Regulation 2559.3."

Diageo-Guinness is a Delaware corporation with its principal place of business in Connecticut. It holds a type 10 license (beer and wine importer) from the Department and sells beer and FMB's to California wholesalers. The Coalition is an association of six manufacturers and/or marketers of alcoholic beverages, including FMB's. On June 12, 2008, plaintiffs filed a complaint against the Board containing two causes of action, one seeking a declaration that the FMB Regulations are void as beyond the Board's authority and not reasonably necessary to effectuate the Board's taxing function and the other claiming a violation of the commerce clause of the United States Constitution. Plaintiffs later dropped their commerce clause claim.

Plaintiffs moved for a preliminary injunction to prevent the Board from implementing the Regulations. The trial court denied the motion. Plaintiffs thereafter moved for summary judgment. The Board moved for summary judgment as well.

The trial court denied plaintiffs' motion for summary judgment but granted that of the Board. The court concluded the Board has authority to adopt classifications of alcoholic beverages for taxation purposes that are different from the classifications adopted by the Department for purposes of licensing and regulation. According to the court: "[T]he Board's obligation to impose and enforce taxation under the . . . Tax Law is founded in large part upon the clear classification of alcoholic beverages. Absent specific legislative guidance on the classification of FMBs, the Board must do so itself to effectuate proper taxation." The court thereafter entered judgment for the Board.

## DISCUSSION

The trial court granted the Board's motion for summary judgment and denied that of plaintiffs. Normally, on a motion for summary judgment, the issue is whether there are material issues of fact requiring a trial. (Code Civ. Proc., § 437c, subd. (c).) In this instance, the parties agree there are no material issues of fact and summary judgment is appropriate. The only question is which side is entitled to judgment in its favor. Resolution of that question turns on the lawfulness of the FMB Regulations.

The Department has for years informally classified FMB's as beer for purposes of licensing and regulation. The federal government, through its Alcohol and Tobacco Tax and Trade Bureau (TTB), classifies FMB's as beer if (1) they contain no more than 6 percent alcohol by volume and derive no more than 49 percent of that alcohol content from "flavors and other nonbeverage ingredients containing alcohol" or (2) they contain more than 6 percent alcohol by volume but no more than 1.5 percent of the overall volume of the beverage consists of "alcohol derived from added flavors and other nonbeverage ingredients containing alcohol." (27 C.F.R. §§ 7.11 (a)(1), (2), 25.15(b) (2011).) Plaintiffs assert the Department "follows TTB's classification rule for FMBs."

By virtue of the FMB Regulations, the Board has undertaken to classify an FMB for purposes of excise taxation as a distilled spirit rather than a beer if it "contains 0.5 percent or more alcohol by volume derived from flavors or other ingredients containing alcohol obtained from the distillation of fermented agricultural products." (Regulation 2558.) The Board has also created a rebuttable presumption that every alcoholic beverage other than wine falls within the foregoing definition. (Regulation 2559.) Plaintiffs contend the Board did not have the legal authority to do so.

The trial court concluded, "The Board does not lack authority to enact beverage classification regulations for taxation purposes inconsistent with [the Department's] classification and licensing decisions . . . ." The court noted the Board had previously deferred to the Department's classification, but "there is no statute that clearly compelled it to do so." The court further explained "there are no statutes which bestow upon [the Department] the exclusive power to classify FMBs, or any power to classify FMBs for taxation purposes." According to the court: "[T]he Board's obligation to impose and enforce taxation under the . . . Tax Law is founded in large part upon the clear classification of alcoholic beverages. Absent specific legislative guidance on the classification of FMBs, the Board must do so itself to effectuate proper taxation."

The trial court's analysis boils down to this: Because there is no legislation expressly prohibiting the Board from adopting regulations defining FMB's as distilled spirits, and because the Board must classify FMB's as something for purposes of assessing excise taxes, the Board had the power to adopt the FMB Regulations.

■ This analysis assumes the existence of a regulatory power based on the absence of a prohibition against the exercise of such a power. Although the absence of a *specific* statutory authorization for a regulation does not mean the regulation necessarily exceeds statutory authority (*Mineral Associations Coalition v. State Mining & Geology Bd.* (2006) 138 Cal.App.4th 574, 589 [41 Cal.Rptr.3d 544]), agency action must nevertheless be based on at least an implied delegation of power. Actions exceeding express or implied delegated powers are void. (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1042 [56 Cal.Rptr.2d 109, 920 P.2d 1314].)

We begin our analysis with a consideration of the applicable standard of review. Plaintiffs contend the FMB Regulations are quasi-legislative acts subject to review under a standard of "respectful non-deference." Under this standard, the issue is whether the Board exceeded its delegated powers. This is an issue of law subject to independent review. The Board agrees the FMB Regulations amount to quasi-legislative acts. As such, review is limited to whether the regulations fall within the delegated power and are reasonably necessary to implement the purposes of the Tax Law. Hence, the parties agree the initial question presented is whether the Board exceeded its delegated powers in adopting the FMB Regulations, and this is a question of law subject to independent review.

■ It is not quite so clear the FMB Regulations are the product of quasi-legislative action entitled to deferential review. "It is a 'black letter'

proposition that there are two categories of administrative rules and that the distinction between them derives from their different sources and ultimately from the constitutional doctrine of the separation of powers. One kind—quasi-legislative rules—represents an authentic form of substantive lawmaking: Within its jurisdiction, the agency has been delegated the Legislature's lawmaking power. [Citations.] Because agencies granted such substantive rulemaking power are truly 'making law,' their quasi-legislative rules have the dignity of statutes. When a court assesses the validity of such rules, the scope of its review is narrow. . . ." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*).)

■ The other category of administrative rules is interpretation. "Unlike quasi-legislative rules, an agency's interpretation does not implicate the exercise of a delegated lawmaking power; instead, it represents the agency's view of the statute's legal meaning and effect, questions lying within the constitutional domain of the courts. But because the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues. It is this 'expertise,' expressed as an interpretation (whether in a regulation or less formally . . .), that is the source of the presumptive value of the agency's views. An important corollary of agency interpretations, however, is their diminished power to bind. Because an interpretation is an agency's *legal opinion*, however 'expert,' rather than the exercise of a delegated legislative power to make law, it commands a commensurably lesser degree of judicial deference." (*Yamaha, supra*, 19 Cal.4th at p. 11.)

The ABC Act contains express definitions of beer and distilled spirits. A beer is "any alcoholic beverage obtained by the fermentation of any infusion or decoction of barley, malt, hops, or any other similar product, or any combination thereof in water . . . ." (Bus. & Prof. Code, § 23006.) A distilled spirit is "an alcoholic beverage obtained by the distillation of fermented agricultural products . . . ." (Bus. & Prof. Code, § 23005.) An FMB is a mixture of beer with one or more flavors or ingredients containing alcohol that would be distilled spirits but for the fact they are unfit for human consumption. An FMB does not fit neatly within either statutory definition.

According to plaintiffs, the Department has informally determined to follow the TTB's definition of an FMB as beer so long as it contains no more than 6 percent alcohol and no more than 49 percent of that alcohol comes from flavors or other nonbeverage ingredients or, if it contains more than 6 percent alcohol, no more than 1.5 percent of the beverage consists of alcohol from flavors or other nonbeverage ingredients.

The determination by the Department to follow the TTB definition of FMB's would appear to be a matter of *interpretation* of the definitions of beer and distilled spirits found in the ABC Act. Essentially, the Department has determined that an alcoholic beverage falling within the statutory definition of a beer that is then mixed with flavors or other nonbeverage ingredients remains a beer so long as the volume of these added ingredients is sufficiently low.

The Board has chosen a more formal approach to categorizing FMB's for purposes of taxation. Nevertheless, the FMB Regulations would appear to be an attempt to interpret the definitions of beer and distilled spirits so as to encompass FMB's.

In *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785 [85 Cal.Rptr.2d 844, 978 P.2d 2] (*Ramirez*), the state high court considered Labor Code section 1171, which expressly excludes from overtime laws an "outside salesperson." The Industrial Welfare Commission (IWC), the state agency charged with implementing the statute, issued a wage order defining the term "outside salesman" as one who regularly works more than half the time away from the employer's premises selling or obtaining orders. The issue presented on appeal was the validity of that wage order. (20 Cal.4th at pp. 789–790, 795.)

The high court noted the IWC "is the state agency empowered to formulate regulations (known as wage orders) governing minimum wages, maximum hours, and overtime pay . . . ." (*Ramirez, supra,* 20 Cal.4th at p. 795.) The court determined the wage order had both quasi-legislative and interpretive aspects. (*Id.* at p. 799.) According to the court: "The Legislature has expressly delegated to the IWC the authority to promulgate wage orders setting 'minimum wages, maximum hours and standard conditions of labor for all employees.' ([Lab. Code,] § 1185.) 'Judicial authorities have repeatedly emphasized that in fulfilling its broad statutory mandate, the IWC engages in a quasi-legislative endeavor, a task which necessarily and properly requires the commission's exercise of a considerable degree of policy-making judgment and discretion. [Citations.] [¶] Because of the quasi-legislative nature of the IWC's authority, the judiciary has recognized that its review of the commission's wage orders is properly circumscribed.' [Citation.] . . . [T]his delegation of legislative authority includes the power to elaborate the meaning of key statutory terms. On the other hand, since the IWC is engaged in construing the meaning of a portion of section 1171, its regulation is in some sense interpretive." (*Ramirez, supra,* 20 Cal.4th at pp. 799–800.)

The high court went on to find the wage order valid as either a quasi-legislative or an interpretive regulation. (*Ramirez, supra,* 20 Cal.4th at pp. 800–801.) Regarding the latter, the court explained: The wage order "has

two attributes which weigh in favor of considerable judicial deference to the agency's interpretation. First, the interpretation is contained in a regulation formally adopted pursuant to the Administrative Procedure Act. . . . Second, the regulation is entitled to greater deference because it embodies a statutory interpretation that the administrative agency ' "has consistently maintained" ' and ' "is [of] long-standing" ' [citation], i.e., for almost 20 years." (*Id.* at p. 801.)

In *Megrabian v. Saenz* (2005) 130 Cal.App.4th 468 [30 Cal.Rptr.3d 262] (*Megrabian*), the Court of Appeal considered a provision of the state's cash assistance program for aged, blind, and disabled legal immigrants (CAPI) (Welf. & Inst. Code, § 18937 et seq.) which bases eligibility for benefits in part on whether the person " 'entered the United States' " before a certain date. (*Megrabian*, at p. 473.) The State Department of Social Services (DSS) interpreted the phrase "entered the United States" to be "based not on the date an immigrant physically arrived in the United States, but on 'the effective date of the non-citizen's current immigration status as determined by the Immigration and Naturalization Service.' " (*Id.* at p. 476.)

As in *Ramirez*, the court found the agency's interpretation had both quasi-legislative and interpretive characteristics. The court explained: "Its interpretation, now embodied in a regulation, was quasi-legislative because the Legislature gave the DSS the power to 'adopt regulations, orders, or standards of general application to implement, interpret, or make specific the law enforced by' it, including CAPI. [Citations.] On the other hand, the DSS construed the meaning of a portion of a statute, and thus 'its regulation is in some sense interpretive.' [Citation.]" (*Megrabian*, *supra*, 130 Cal.App.4th at p. 479.)

The Board's regulatory power under the Tax Law is found in Revenue and Taxation Code section 32451, which reads: "The board shall enforce the provisions of this part and may prescribe, adopt, and enforce rules and regulations relating to the administration and enforcement of this part." The FMB Regulations are, at least arguably, an attempt to interpret the terms "beer" and "distilled spirit" as those terms relate to FMB's. They therefore have attributes of both quasi-legislative and interpretive regulations.

But we need not decide the applicable standard of review in this matter. As we shall explain, assuming we are dealing with quasi-legislative action subject to the most deferential review, the FMB Regulations do not withstand even this relaxed scrutiny.

■ The question whether Revenue and Taxation Code section 32451 can be read to authorize the Board to classify FMB's as distilled spirits for

purposes of taxation is one of statutory construction. In matters of statutory interpretation, our fundamental concern is with legislative intent. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We determine such intent by looking first to the words of the enactment, giving them their usual and ordinary meaning. (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) However, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.] Legislative intent will be determined so far as possible from the language of the statutes, read as a whole." (*County of Fresno v. Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426 [251 Cal.Rptr. 170].)

Under the Tax Law, the Board is tasked with assessing and collecting excise tax on the sale of alcoholic beverages in the state. The Tax Law recognizes three general classes of alcoholic beverages—beer, wine and distilled spirits—and applies different taxation rates to each. Those three classes are expressly defined in the ABC Act but not the Tax Law. The Tax Law provides that, "[u]nless the context otherwise requires, the definitions set forth in [the Tax Law] and those in [the ABC Act] govern the construction of [the Tax Law]." (Rev. & Tax. Code, § 32002.) Thus, since the Tax Law does not define beer, wine or distilled spirits, in determining what tax rate to apply to a particular alcoholic beverage, the Board must look to the definitions in the ABC Act.

■ The ABC Act contains no express definition of an FMB. The Board contends the definition of distilled spirits encompasses FMB's because it includes "[a]ny alcoholic beverage that is a mixture and includes alcohol 'obtained by the distillation of fermented agricultural products.' " This is an obvious misreading of the relevant statute. As noted above, a distilled spirit is defined under the ABC Act as "an alcoholic beverage obtained by the distillation of fermented agricultural products, and includes alcohol for beverage use, spirits of wine, whiskey, rum, brandy, and gin, *including all dilutions and mixtures thereof.*" (Bus. & Prof. Code, § 23005, italics added.) The word "thereof" in the foregoing definition clearly means the mixture must be of the items listed earlier, i.e., "alcohol for beverage use, spirits of wine, whiskey, rum, brandy, and gin." This would not include an alcoholic beverage consisting of a distilled spirit mixed with beer.

Regulation 2558 defines a distilled spirit, for purposes of taxation, as "any alcoholic beverage, except wine . . . , which contains 0.5 percent or more alcohol by volume derived from flavors or other ingredients containing alcohol obtained from the distillation of fermented agricultural products." Under this regulation, a beer is now defined as any alcoholic beverage except wine that contains *less than* 0.5 percent alcohol so derived. Although perhaps

intended as a means of bridging the gap between beer and distilled spirits to include FMB's, Regulation 2558 essentially redefines beer and distilled spirits. Under the regulation, a beer is *any* alcoholic beverage, except wine, that contains less than 0.5 percent alcohol, regardless of whether the beverage is "obtained by the fermentation of any infusion or decoction of barley, malt, hops, or any other similar product, or any combination thereof in water." (Bus. & Prof. Code, § 23006.) This does not appear to be simply an interpretation of the statutory definition of beer but a wholesale rewrite, at least for purposes of taxation.

■ "Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations." (*Morris v. Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)

But even if Regulation 2558 amounted to a reasonable interpretation of the statutory definitions of beer and distilled spirits, it is beyond the Board's delegated authority.

The ABC Act contains statutory definitions of beer and distilled spirits. Business and Professions Code section 25750 states: "(a) The department shall make and prescribe those reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the California Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that section or by [the ABC Act], not inconsistent with any statute of this state, including particularly [the ABC Act] . . . ." To the extent interpretation of the statutory definitions of beer and distilled spirits found in the ABC Act is necessary to carry out the purposes of the ABC Act, this would fall within the authority of the Department.

The Board contends, and the trial court agreed, that the Department's interpretation of the statutory definitions for purposes of licensing and regulation does not preclude the Board from adopting different interpretations for purposes of taxation. The Board cites *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 [46 Cal.Rptr.3d 41, 138 P.3d 193] and *Los Angeles Unified School Dist. v. Superior Court* (2007) 151 Cal.App.4th 759 [60 Cal.Rptr.3d 445] for the proposition that "[t]he rule that identical statutory language should be interpreted the same way 'applies only when the statutes in question cover "the same or an analogous subject" matter.' " According to the Board, registration and licensing under the ABC Act is not the same subject matter as taxation under the Tax Law.

■ The short answer to the Board's argument is that, if the Legislature had intended to permit different interpretations of the terms beer and distilled

spirits under the ABC Act and the Tax Law, it would not have provided in Revenue and Taxation Code section 32002 that the definitions contained in the ABC Act apply to the Tax Law. In our view, this provision demonstrates a legislative intent that a uniform system of classifications for alcoholic beverages be applied.

This intent is further demonstrated by the interplay between Business and Professions Code section 23661 and Revenue and Taxation Code section 32111. The former reads in relevant part:

"Except as otherwise provided in this section, alcoholic beverages may be brought into this state from without this state for delivery or use within the state only by common carriers and only when the alcoholic beverages are consigned to a licensed importer . . . . [¶] . . . [¶]

"A manufacturer of distilled spirits may transport such distilled spirits into this state in motor vehicles owned by or leased to the manufacturer, and operated by employees of the manufacturer, if:

"(a) Such distilled spirits are transported into this state from a place of manufacture within the United States; and

"(b) The manufacturer holds a California distilled spirits manufacturer's license; and

"(c) Delivery is made to the licensed premises of such distilled spirits manufacturer." (Bus. & Prof. Code, § 23661.)

Pursuant to this provision, a licensed manufacturer of distilled spirits may transport such product into the state in its own motor vehicles without using a common carrier and a licensed importer.

Revenue and Taxation Code section 32111 reads: "Before commencing to transport distilled spirits into this state pursuant to the provisions of [Business and Professions Code section 23661], the distilled spirits manufacturer shall register with the board and make application to the board for a manufacturer's interstate alcoholic beverage transporter's permit, which, upon issuance, shall be valid until revoked by the board."

Obviously, these provisions cannot work in tandem, as intended, if a different definition of distilled spirits applies to each.

Similar interrelated provisions apply to beer importation. (See Bus. & Prof. Code, § 23661.5 and Rev. & Tax. Code, § 32110.)

In addition to the foregoing, Revenue and Taxation Code section 32152 reads: "The board shall adopt such rules and regulations as may be necessary to coordinate so far as permitted by the provisions of this part the system of beer and wine taxation imposed by this part with the system of beer and wine taxation imposed by the internal revenue laws of the United States." Plaintiffs contend this provision requires the Board to adopt the same treatment of FMB's as that utilized by the TTB which, according to plaintiffs, is the approach taken by the Department.

The Board contends Revenue and Taxation Code section 32152 is inapplicable to the present matter because it does not mention distilled spirits. However, to the extent the statute mentions beer and wine, and beer and wine encompass every alcoholic beverage except distilled spirits, we do not see how this makes a difference.

The Board further argues that if the Legislature had intended that it simply adopt the federal classification scheme for alcoholic beverages, it would have said so and would not have enacted its own definitions.

We are not altogether certain what the Legislature intended to accomplish with Revenue and Taxation Code section 32152. We agree with the Board that if the Legislature had intended the Board simply to adopt the federal classification scheme, it would have said so. Nevertheless, we note that Revenue and Taxation Code section 32177.5 prohibits the imposition of tax on the sale of distilled spirits at any federal armed forces exchanges, officers' clubs or messes. To the extent the Board adopts a definition of distilled spirits different from that utilized by the TTB, this could lead to the taxation of products considered to be distilled spirits under federal law but classified as beer under Regulation 2558.

■ We conclude the Legislature did not delegate authority to the Board to adopt its own classification of alcoholic beverages for purposes of excise taxation. The Legislature directed that the definitions in the ABC Act apply to the Tax Law, and it is the Department, not the Board, that is authorized to interpret as necessary the provisions of the ABC Act, including the relevant alcoholic beverage definitions. The Board instead adopted regulations that utilize different classifications than those adopted by the Department. The Board's regulations therefore cannot stand.

In reaching this conclusion, we have no occasion to consider the validity of the classification scheme adopted by the Department itself. According to plaintiffs, the Department has adopted the classifications used by the federal TTB. We decide here simply that, under the statutory scheme adopted by the Legislature in the ABC Act and the Tax Law, interpretation of the statutory

definitions of alcoholic beverages is a matter for the Department, and the Board cannot adopt its own classifications for taxation purposes. Because the trial court concluded otherwise, we reverse.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to vacate its orders denying plaintiffs' motion for summary judgment and granting that of the Board and to enter new orders granting plaintiffs' motion for summary judgment and denying that of the Board and to enter final judgment for plaintiffs. Plaintiffs are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Blease, Acting P. J., and Butz, J., concurred.